IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNIVAC DENTAL COMPANY** and **LACTONA CORPORATION,** | : : : | CIVIL ACTION NO. 1:07-CV-0493 |
| **Plaintiffs** | : : | **(CONSOLIDATED)** |
| v. | : : | **(Judge Conner)** |
| **DENTSPLY INTERNATIONAL, INC.,** | : : | |
| **Defendant** | : | |

# MEMORANDUM

Plaintiff Lactona Corporation ("Lactona") brings this antitrust action under § 2 of the Sherman Act, 15 U.S.C. § 2, alleging that defendant Dentsply International ("Dentsply") monopolized the market for artificial teeth. Dentsply has filed a motion to dismiss (Doc. 45), alleging that Lactona's claim is barred by the statute of limitations and fails to allege an antitrust injury. For the reasons that follow, the motion will be denied.

I.  **Statement of Facts**[1]

Lactona and Dentsply are manufacturers of prefabricated artificial teeth.[2] (Doc. 53 ¶¶ 3, 10, 13-14.) Dentsply controls approximately seventy-five percent of the market. (Id. ¶ 20.) The complaint does not specify the size of Lactona's market share. The present suit arises from Dentsply's alleged attempts to exercise monopolistic power in the market during the early- and mid-1990s. (Id. ¶¶ 9, 15-24.)

Artificial teeth are principally distributed through wholesale dealers, which resell them to dental laboratories that assemble consumer dental products. (Id. ¶ 7-8.) In 1987, Dentsply began imposing a series of inventory restrictions on its dealers. (Id. ¶ 15.) These restrictions culminated in 1993 with the imposition of "Dealer Criteria" for *all* distributors of Dentsply teeth. (Id.) One of these Criteria, Dealer Criterion No. 6, prohibited dealers from "add[ing] further tooth lines to their product offering" and was designed to "block competitive distribution points" in the market for artificial teeth. (Id.)

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the counterclaims. See infra Part II. The court will relate allegations in the complaint only to the extent necessary to present a complete depiction of the factual background of the counterclaims. The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

[2] The complaint is premised on alleged antitrust injuries suffered by Lactona and its predecessor entity, Uni Lac Corporation. (Doc. 53 ¶ 3.) Both entities have allegedly sold dental products and artificial teeth in competition with Dentsply. (Id. ¶¶ 3, 14, 31.) For purposes of the instant motion, both entities are collectively identified as "Lactona." Uni Lac is also the predecessor of Univac Dental Company, a plaintiff in this consolidated action. Univac's claims are unaffected by the instant motion.

Dentsply also allegedly engaged in a variety of anticompetitive conduct associated with implementation of Dealer Criterion No. 6. (Id. ¶ 16.) For example, Dentsply threatened to end its relationship with a dealer that ordered $25,000 of teeth from Lactona, and it exchanged another dealer's Lactona inventory worth $50,000 for Dentsply teeth valued at $100,000. (Id. ¶¶ 17, 19.) At Dentsply's request, a third dealer sold its entire supply of Lactona teeth to Dentsply, which destroyed the teeth. (Id. ¶ 18.) Dentsply also threatened to terminate its business relationship with many dealers who stocked teeth manufactured by Dentsply's competitors. (Id. ¶ 20.) This threat was particularly poignant because terminated dealers were removed from Dentsply's exchange account program, which allowed them to returned unused and surplus inventory to Dentsply for credit toward future teeth purchases. (Id. ¶ 22.) Dealers terminated by Dentsply forfeited credit accumulated under the program. (Id.) Such actions, coupled with market expectation that dealers stock Dentsply teeth, caused numerous dealers to cease carrying teeth produced by Lactona and Dentsply's other competitors. (Id. ¶¶ 21-24, 31, 33.)

In January 1999, the U.S. Department of Justice instituted an antitrust action against Dentsply, alleging that its conduct violated the Sherman Act's prohibition on monopolization, 15 U.S.C. § 2. See (id. ¶ 25); United States v. Dentsply Int'l, Inc., 277 F. Supp. 2d 387, 390 (D. Del. 2003). The district court found that Dentsply had not violated the Sherman Act, and an appeal to the United States Court of Appeals for the Third Circuit followed. See (Doc. 53 ¶¶ 25-26); United States v. Dentsply Int'l, Inc., 399 F.3d 181 (3d Cir. 2005). The Third Circuit reversed, finding that

3

Dentsply's aggressive market-control strategies, including Dealer Criterion No. 6, violated § 2 of the Sherman Act. See (Doc. 53 ¶ 26); Dentsply, 399 F.3d at 196. The proceedings brought by the government closed on April 26, 2006, when the district court entered final judgment against Dentsply. See (Doc. 53 ¶ 27); United States v. Dentsply Int'l, Inc., No. Civ. A. 99-005, 2006 WL 2612167, at *5 (D. Del. Apr. 26, 2006).

Lactona commenced the instant action on April 25, 2007, demanding recovery for antitrust injuries suffered as a result of Dentsply's anticompetitive conduct and contending that the Clayton Act, 15 U.S.C. § 16(I) tolled the four-year statute of limitations during the pendency of the government proceedings. Dentsply filed a motion to dismiss, arguing that Lactona's complaint is time-barred and fails to allege a substantive antitrust claim. The parties have fully briefed these issues, and Dentsply's motion is ripe for disposition.

## II.    **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the

4

record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting Erickson v. Pardus, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007). Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Montville Twp. v. Woodmont Builders LLC, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting Twombly, --- U.S. at ---, 127 S. Ct. at 1969). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**III.   Discussion**

Dentsply moves for dismissal of Lactona's complaint on two grounds.  It contends that Lactona filed its complaint after expiration of the limitations period applicable to its federal and state claims.  Alternatively, it argues that the complaint inadequately pleads an antitrust injury under Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 2197 (2007).

**A.   Statute of Limitations**

Rule 12(b) of the Federal Rules of Civil Procedure requires that all defenses be asserted in an answer except those expressly enumerated in the rule.  See FED. R. CIV. P. 12(b).  The Federal Rules do not require a plaintiff to aver specific allegations regarding the time of the alleged offense, and Rule 12(b) does not provide for pre-answer assertion of a limitations defense.  See id. Kiewit Constr., Inc. v. Franbilt, Inc., No. 07-CV-121A, 2007 WL 2461919, at *2 (W.D.N.Y. Aug. 24, 2007) (quoting Jones v. United Gas Improvement Corp., 383 F. Supp. 420, 436 n.2 (1974)) (noting that Federal Rules "'do[] not require specific allegations of place and time, but merely state[] that when such specific allegations are made, they are material'").  Nevertheless, a district court may dismiss a complaint as time-barred if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1974).  To qualify for dismissal, the face of the complaint must clearly demonstrate the applicability of the limitations defense.  Id.  Antitrust claims are

governed by a four-year statute of limitations and require no heightened standard of pleading.  See In re: Hydrogen Peroxide Antitrust Litig., 401 F. Supp. 2d 451, 458 (E.D. Pa. 2005) (stating that heightened pleading standard for antitrust claims is inappropriate under federal notice pleading standards); see also 15 U.S.C. § 15b; In re Lower Lake Erie Iron Ore Antitrust Litig., 998 F.2d 1144, 1171 (3d Cir. 1993) (observing that antitrust claims are governed by four-year limitations period).

In the present case, Lactona's complaint predicates antitrust injury upon Dentsply's 1994 threat to sever business ties with a dealer that ordered $25,000 in Lactona teeth and upon two undated incidents in which Dentsply purchased Lactona teeth or exchanged them for Dentsply products.  Lactona also alleges sundry anticompetitive actions associated with implementation of Dealer Criterion No. 6, such as forfeiture of terminated dealers' exchange credit.  Dentsply contends that, at the time Lactona filed its complaint, the statute of limitations forbade all claims except those accruing on or after January 5, 1995.  Dentsply seeks dismissal on the grounds that the 1994 threat is no longer actionable and that Lactona has not specified when other allegedly anticompetitive conduct occurred.

Granting Dentsply's motion would impose an obligation on Lactona to allege the precise timing of every instance of alleged anticompetitive conduct.  The Federal Rules of Civil Procedure impose no such burden, and the complaint's failure to recite the dates on which the alleged harm occurred does not warrant dismissal under the statute of limitations.  See Jairett v. First Montauk Sec. Corp., 203 F.R.D. 181, 186 (E.D. Pa. 2001) (observing that the Federal Rules of Civil

Procedure "do[] not require specificity in pleading time and place"); 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1309 (3d ed. 2004) (stating that the Federal Rules "do[] not require the pleader to set out specific allegations of time and place," which are generally required only if "the statement of a claim is so vague and ambiguous that the other party cannot adequately frame an answer" without them); accord In re Pressure Sensitive Labelstock Antitrust Litig., 356 F. Supp. 2d 484, 490-91, 494 (M.D. Pa. 2005) (holding that the complaint's failure to aver the time and place of the defendant's alleged conspiratorial conduct did not require dismissal of the plaintiff's antitrust action because the Federal Rules impose no heightened pleading standard on such claims). The face of the complaint does not clearly indicate that Lactona's claims falls outside the limitations period, and the court cannot dismiss the complaint on limitations grounds.[3]

---

[3]Dentsply further seeks to dismiss the complaint for failure to allege a continuing antitrust violation. The continuing violation theory authorizes antitrust recovery for a defendant's time-barred actions if the plaintiff demonstrates that they caused the plaintiff to incur damage within the limitations period. See Glaberson v. Comcast Corp., No. Civ. A. 03-6604, 2006 WL 2559479, at *13 (E.D. Pa. Aug. 31, 2006) (quoting Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15 (1968)) ("The four-year statute of limitations does not bar later recovery for private antitrust actions if the defendant's conduct 'constituted a continuing violation of the Sherman Act and . . . inflicted continuing and accumulating harm.'"). The theory applies only to conduct outside the limitations period, and a plaintiff need not invoke it if a defendant's anticompetitive act falls within the statute of limitations. See ChemiSpA v. GlaxoSmithKline, 356 F. Supp. 2d 495, 498-99 (E.D. Pa. 2005) (quoting In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 551 (D.N.J. 2004) (observing that under continuing violation theory each injury suffered by a plaintiff as a result of the defendant's anticompetitive behavior restarts the limitations period regardless of whether the act that caused the injury

B.     **Sufficiency of Lactona's § 2 Allegations**

Dentsply also seeks dismissal of Lactona's monopolization claim, asserting that its allegations do not "raise a right to relief above the speculative level," as required by Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1965 (2007). Section 2 of the Sherman Act[4] prohibits monopolization of interstate commerce. A § 2 plaintiff must demonstrate that the defendant (1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained that power through means other than "growth or development as a consequence of a superior product, business acumen, or historic accident." Broadcom Corp. v. Qualcomm, Inc., 501

---

remains within the period).
    With the exception of Dentsply's alleged 1994 threat to cease conducting business with a dealer that purchased Lactona's teeth, the complaint does not specify when Denstply's alleged anticompetitive conduct occurred. Lactona's need to invoke the continuing violation theory is wholly dependent on whether the statute of limitations bars a direct antitrust claim. Hence, dismissal prior to an assessment of whether the statute of limitations applies to Dentsply's actions would be premature.

    [4]Section 2 provides:

    Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2. Individuals injured by conduct that violates § 2 may advance a private right of action under 15 U.S.C. §§ 15(a) and 26.

F.3d 297, 307 (3d Cir. 2007) (quoting <u>United States v. Grinnell Corp.</u>, 384 U.S. 563, 570-71 (1966)).

### 1.     **Dentsply's Alleged Possession of Monopoly Power**

"Monopoly power is the ability to control prices and exclude competition in a given market. If a firm can profitably raise prices without causing competing firms to expand output and drive down prices, that firm has monopoly power." <u>Id.</u> (citations omitted). Monopoly power may be established through either direct or indirect evidence. To establish monopoly power by direct evidence, the plaintiff must demonstrate the existence of "supracompetitive prices and restricted output" or establish an inference that "a firm has a dominant share in a relevant market[] and that entry barriers protect the market." <u>Id.</u> (citations omitted). In contrast, a plaintiff establishing monopoly power through indirect evidence must first define the relevant market and subsequently demonstrate that the defendant controls a significant share thereof. <u>Id.</u>; see also <u>Toys "R" Us, Inc. v. F.T.C.</u>, 221 F.3d 928, 937 (7th Cir. 2000) ("The . . . more conventional way [to establish monopoly power] is by proving relevant product and geographic markets and by showing that the defendant's share exceeds whatever threshold is important for the practice in the case.").

In the case *sub judice*, Lactona alleges that Dentsply controls approximately seventy-five percent of the U.S. market for prefabricated artificial teeth, a share approximately fifteen times larger than that of the second-largest producer. The market is characterized by relatively few dealers, who act as distribution conduits

between manufacturers and a limited number of dental laboratories. Dental laboratories assemble dentures using the prefabricated teeth. Laboratories expect dealers to stock Dentsply products, due, in part, to its market dominance. As a result, Dentsply allegedly wields considerable influence over the terms and conditions on which dealers purchase and sell its products and those of its competitors. Hence, Lactona has pled allegations that, if proven, demonstrate Dentsply's monopolistic dominance in the market for prefabricated artificial teeth.

### 2. Dentsply's Alleged Anticompetitive Conduct

The second element of a § 2 monopolization claim requires the plaintiff to establish "acquisition or possession of monopoly power . . . by some anticompetitive conduct on the part of the possessor." Broadcom, 501 F.3d at 308 (citing Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 407 (2004). Any conduct by the defendant that secures market share by means other than the competitive merits of the defendant's product may qualify as anticompetitive. Id. (describing anticompetitive conduct as that which maintains monopoly power "on some basis other than the merits"). "Conduct that impairs the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way may be deemed anticompetitive." Id. (citing Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 604-05 & n.32 (1985)). "Conduct that merely harms competitors, however, while not harming the competitive process itself, is not anticompetitive." Id. (citing Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 224 (1993).

In the instant matter, Lactona alleges that Dentsply threatened to cease supplying teeth to a dealer that ordered Lactona teeth having a value of $25,000. Dentsply allegedly exchanged another dealer's inventory of Lactona teeth for a supply of Dentsply teeth worth approximately twice the value of the Lactona products. Dentsply purchased—and destroyed—a third dealer's inventory of Lactona teeth.  Dentsply allegedly threatened other dealers with termination if they continued to sell competitors' teeth.  In 1993 Dentsply promulgated Dealer Criterion No. 6, which prohibited its dealers from carrying competitors' new products.  Lactona asserts that no Dentsply dealer added competing tooth lines its inventory between 1993 and 1999.  (Doc. 53 ¶ 23.)  These allegations, if true, raise a plausible inference that Dentsply maintained its monopolistic market share through methods other than the competitive merits of its products.  Lactona has therefore presented allegations that raise its right to recovery under § 2 above mere speculation.  Accordingly, Dentsply's motion to dismiss Lactona's complaint will be denied.

## IV.    Conclusion

Lactona has not alleged when Dentsply committed the anticompetitive acts of which it complains, and the validity of Dentsply's limitations defense cannot be ascertained from the face of the complaint.  The allegations in Lactona's complaint are sufficient to plead an antitrust injury under § 2 and Twombly.  Accordingly, the court will deny Dentsply's motion to dismiss (Doc. 45).

An appropriate order will issue.

                                                   S/ Christopher C. Conner
                                                   CHRISTOPHER C. CONNER
                                                   United States District Judge

Dated:       June 17, 2008

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNIVAC DENTAL COMPANY and LACTONA CORPORATION,** | : | **CIVIL ACTION NO. 1:07-CV-0493** |
| | : | |
| Plaintiffs | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **DENTSPLY INTERNATIONAL, INC.,** | : | |
| | : | |
| Defendant | : | |

## **ORDER**

AND NOW, this 17th day of June, 2008, upon consideration of the motion to dismiss (Doc. 45) of Dentsply International, Inc., and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion to dismiss (Doc. 45) is DENIED.

                                                           S/ Christopher C. Conner  
                                                          CHRISTOPHER C. CONNER  
                                                          United States District Judge