**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **UNIVAC DENTAL COMPANY** | : | **CIVIL ACTION NO.** |
| **Plaintiff, and** | : | **1:07-CV-493** |
| | : | |
| **LACTONA CORPORATION** | : | **(Judge Conner)** |
| | : | |
| **Consolidated Plaintiff,** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **v.** | : | |
| | : | **Filed Electronically** |
| **DENTSPLY INTERNATIONAL, INC.** | : | |
| | : | |
| **Defendant.** | : | |

_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT DENTSPLY INTERNATIONAL,
<u>INC.'S MOTION FOR SUMMARY JUDGMENT</u>**

Paul R. Braunsdorf
HARRIS BEACH PLLC
99 Garnsey Road
Pittsford, New York 14534
(585) 419-8800
*Attorneys for Univac Dental Company*

Bart D. Cohen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania, 19103
(215) 875-3000
*Attorneys for Lactona Corporation*

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    Section 2 Violations Victimize Competition Rather than
Individual Competitors.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    Dentsply Committed a Continuing Violation Throughout the
Relevant Period.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.    Tolling Attributable to the Government Action Encompasses
Swaps and Rebates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.    Dentsply's Conduct Caused Antitrust Injury to Universal.  . . . . . . . 11

    E.    Dentsply's Swaps and Rebates were an Inseparable Aspect
of its Section 2 Violation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

### FEDERAL CASES

**Page(s)**

*In re Antibiotic Antitrust Actions*,
     333 F. Supp. 317 (S.D.N.Y. 1971)…………………………………………10

*Barr Laboratories, Inc. v. Abbott Labs.*,
     978 F.2d 98 (3d Cir. 1992)………………………………………………….6

*B & H Med., L.L.C. v. ABP Admin., Inc.*,
     526 F.3d 257 (6th Cir. 2008)……………………………………………….12

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
     974 F.2d 1358 (3d Cir. 1992)………………………………………………5

*Callahan v. A.E.V., Inc.*,
     182 F.3d 237 (3d Cir. 1999)………………………………………………...5

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
     370 U.S. 690 (1962)……………………………………………………….13

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
     415 F. Supp. 176 (E.D. Pa. 1976)………………………………………….9

*Harold Friedman Inc. v. Thorofare Markets Inc.*,
     587 F.2d 127 (3d Cir. 1978)………………………………………………..9

*Hennegan v. Pacifico Creative Service, Inc.*,
     787 F.2d 1299 (9th Cir. 1986)……………………………………………9

*Leh v. General Petroleum Corp.*,
     382 U.S. 54 (1965)…………………………………………………………10

*LePage's, Inc. v. 3M*,
     324 F.3d 141 (3d Cir. 2003)……………………………………………*passim*

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
     998 F.2d 1144 (3d Cir. 1993)……………………………………………8, 9

*In re Master Key Antitrust Litig.*,
     70 F.R.D. 29 (D. Conn. 1976)……………………………………………11

*Novell, Inc. v. Microsoft Corp.*,
     505 F.3d 302 (4th Cir. 2007)……………………………………………...11

*PA Dental Ass'n v. Med. Serv. Ass'n of PA*,
       815 F.2d 270 (3d Cir. 1987)………………………………………………….7

*Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*,
       2005 WL 724117 (E.D. Pa. 2005)…………………………………………………5

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
       959 F.2d 468 (3d Cir. 1992)………………………………………………….6

*United States v. Dentsply Int'l, Inc.*,
       399 F.3d 181 (3d Cir. 2005)…………………………………………….*passim*

*United States v. Dentsply Int'l, Inc.*,
       277 F. Supp. 2d 387 (D. Del. 2003)…………………………………………..3

*United States v. Microsoft Corp.*,
       87 F. Supp. 2d 30 (D.D.C. 2000)………………………………………….....12

*Vident v. Dentsply Int'l*,
       SA CV 06-1141 PSG (C.D. Cal. Jun. 5, 2008)………………………………….4

## STATUTE

15 U.S.C. § 16(i)

## I.    PRELIMINARY STATEMENT

Defendant Dentsply International, Inc. ("Dentsply") relies on facts that are alternately misleading, irrelevant and not "facts" at all in support of its pending motion for summary judgment.   Dentsply likewise repeatedly takes positions that are contrary to the Third Circuit's rulings in the government action that precipitated this action.  *See United States v. Dentsply International, Inc.*, 399 F.3d 181 (3d Cir. 2005).  The result is a motion that is groundless in its entirety. Dentsply has not shown that Plaintiffs' claims are barred by either the statute of limitations, or by any relevant antitrust principle.  Plaintiffs were victimized by Dentsply's market-wide antitrust violations, as were Dentsply's other competitors. Dentsply's efforts to distinguish Plaintiffs' injury from the injuries to its competitors generally have no basis in either fact or law.  Dentsply's motion should be denied.

## II.    FACTUAL BACKGROUND

To the limited extent that they are relevant, the "facts" upon which Dentsply relies in support of its pending motion bear little relation to what actually transpired during the relevant period, or to the Third Circuit's factual findings in the government's case against Dentsply.  Dentsply's repeated claim that its actions were not (with few exceptions) directed at Universal stands out in that regard.  As the Third Circuit repeatedly held, all of Dentsply's actions were directed at all of

its competitors, including Universal.  *See* Pls.' Counter-Statement of Material Facts

("Counter-Statement") ¶¶ 24, 26, 28, 31-32.  And in certain instances, Dentsply

does not merely distort the facts, but relies on outright falsehoods, which are defied

by its own contemporaneous records, as well as its own former employees'

testimony.  *See, e.g.,* Counter-Statement ¶¶ 26, 37, 38.  The Court could deny

Dentsply's motion for that reason alone.

Dentsply's motion turns in large part on its claim that it took no overt action

directed strictly at Universal during the four-year period preceding the government

action.  In particular, Dentsply claims that "[t]he record reflects only one occasion

on which Dentsply enforced Dealer Criterion 6 to prevent a dealer from carrying

Universal teeth."  Defendant Dentsply International Inc.'s Statement of Material

Facts ("Statement") ¶ 26 (citing events of 1994).  But Dentsply's own documents

reflect its having done the same thing in 1996 – within four years before the

government action tolled the statute of limitations.  *See* Counter-Statement ¶ 26.

Dentsply likewise claims that "[t]he record reflects only two dealer swaps in

which Dentsply obtained Universal teeth."  Statement ¶ 37.  The record in fact

reflects five such swaps.  Counter-Statement ¶ 37.  That is particularly significant

in that Universal was precluded from doing additional business with each of the

dealers involved after each of those swaps.  *See* Counter-Statement ¶ 28.  Dentsply

also misrepresents the date upon which the last of those swaps occurred.  *See*

2

Statement ¶ 38.  *Cf.* Counter-Statement ¶ 38.  Dentsply's misrepresentations as to the record not only raise questions as to the subject matter of those misrepresentations, but as to the subject matter of all of its factual assertions in support of its motion.[1]

Dentsply repeatedly seeks to minimize the effect of the government action via repeated claims suggesting that action was limited in scope to Dealer Criterion 6.  *See* Statement ¶¶ 44, 46, 50, 51.  That action was in fact wide-ranging, and addressed additional conduct bearing on this case as well, including, but not limited to: rebates; Dentsply's threats to withhold its other products from non-compliant dealers; its refusal to pay the cash value of the exchange accounts of terminated dealers; and swaps.  *See* Counter-Statement ¶¶ 44, 46, 50, 51.  *See also United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 387, 431 (D. Del. 2003) (addressing swaps).

That said, the majority of Dentsply's Statement is addressed to facts that are irrelevant to the disposition of its motion,for reasons both factual and legal.  For example, Dentsply makes much of the quality of both its products and its service,

---

[1]     Plaintiffs do not make these accusations lightly, and do so only after having examined the record closely.  If Dentsply should purport to have been aware of the facts referenced in the Counterstatement in this context, then the reasons for Dentsply's representations would have to be some semantic sleight of hand or otherwise convoluted explanations that were inconceivable to Plaintiffs.  That is the functional equivalent of misrepresentation, and if such explanations are necessary, then the Court can assume that the rest of Dentsply's Statement contains similar misrepresentations as to facts Plaintiffs are not in a position to dispute.

and disparages Universal in that regard as well.  But those issues have no conceivable bearing on the disposition of its motion.[2]  Dentsply also makes much of the deposition testimony of Universal's layperson former principals, on the premise that Plaintiffs are somehow bound or limited by that testimony.  *See* Statement ¶¶ 52-55, 57.  Finally, Dentsply expounds at length as to the histories of the two companies.  Statement ¶¶ 1-14.  Dentsply evidently proceeded from the premise that, to the extent that Plaintiffs admit to immaterial facts, Plaintiffs' doing so reflects an absence of issues as to material facts.

The result is a 37-page brief that alleges no facts tending to prove that Plaintiffs have not stated a valid claim.  Since Dentsply's legal arguments are as narrow as its factual arguments are broad, the majority of the facts upon which Dentsply relies do not appear in its legal argument.  And the ones that do appear are either not "facts" at all, or are distorted so as to create appearance of relevance where none in fact exists.

---

[2]    The Third Circuit deemed those types of issues irrelevant even to the broad government case, holding that it was not "realistic" to conclude that "any new or existing manufacturer may 'steal' a Dentsply dealer by offering a superior product at a lower price" as such efforts "have been thwarted by Dentsply's longtime, vigorous and successful enforcement actions." *United States v. Dentsply International, Inc.*, 399 F.3d 181, 194 (3d Cir. 2005). *See also Vident v. Dentsply Int'l*, SA CV 06-1141 PSG (C.D. Cal. Jun. 5, 2008) (**Error! Main Document Only.**"The inability of Dentsply's competitors to obtain a larger share of the market is due more to Dentsply having blocked access to key dental dealers through effective exclusionary policies than to its competitors' own business decisions. The apparent lack of aggressiveness is not a matter of apathy, but a reflection of the effectiveness of Dentsply's exclusionary policy.") (citation omitted).

III.    <u>ARGUMENT</u>

On a motion for summary judgment, the movant bears the burden of proving that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992).  "Since a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion." *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc*., 2005 WL 724117, at *1 (E.D. Pa. Mar. 29, 2005).

"Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW*, 974 F.2d at 1363.  "[O]ur jurisprudence does not require the summary judgment opponent to match, item for item, each piece of evidence proffered by the movant, but rather he or she must only exceed the 'mere scintilla' standard." *Callahan v. A.E.V., Inc*., 182 F.3d 237, 253 (3d Cir. 1999) (further quotation omitted).  *See also Big Apple BMW*, 974 F.2d at 1363 (same).

Defendant's citation to cases from other circuits notwithstanding, summary judgment is no more favored in antitrust cases than in any other case.  Due to the factual and legal complexity of antitrust cases, parties moving for summary

judgment rarely meet this strict standard.[3]  Plaintiffs adduce numerous factual issues that would preclude summary judgment in this case.  *See supra* § II.  Even absent those, the legal premises upon which Dentsply relies would preclude summary judgment themselves.

**A.    Section 2 Violations Victimize Competition Rather than Individual Competitors.**

Dentsply's repeated claims that the Court should consider only its actions that involved Universal to a greater degree than its competitors are wrong.  The Third Circuit held as much unequivocally in *LePage's, Inc. v. 3M,* 324 F.3d 141 (3d Cir. 2003):

> When a monopolist's actions are designed to prevent one or more new or potential competitors from gaining a foothold in the market by exclusionary, *i.e.* predatory, conduct, its success in that goal is *not only injurious to the potential competitor but also to competition in general*.

*Id.* at 159 (emphasis added).  *See also United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 191 (3d Cir. 2005) (quoting *LePage's*).

The Third Circuit repeatedly held to similar effect as to Dentsply's actions at issue in this case.  "Dentsply's grip on its 23 authorized dealers effectively choked

---

3    *Barr Laboratories, Inc. v. Abbott Labs.*, 978 F.2d 98, 105 (3d Cir. 1992) ("[C]omplex antitrust litigation infrequently merits summary judgment because of its fact-intensive nature."); *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 481 (3d Cir. 1992) ("It may be that because antitrust cases are so factually intensive that summary judgment occurs proportionately less frequently there than in other types of litigation…").

off the market for artificial teeth, leaving only a small sliver for *competitors*."

*United States v. Dentsply Intern., Inc.*, 399 F.3d 181 at 196 (emphasis added).[4]

Universal was among those "competitors."  In short, every one of the many anti-

competitive actions Dentsply took during the relevant period – including those

affecting dealers that never even contacted Universal – necessarily affected

Universal, as well as every one of Dentsply's other competitors.

### B.    Dentsply Committed a Continuing Violation Throughout the Relevant Period.

"[E]ach time a plaintiff is injured by a continuing conspiracy to violate the

antitrust laws, a new cause of action for damages accrues."  *PA Dental Ass'n v.

Med. Serv. Ass'n of PA*, 815 F.2d 270, 278 (3d Cir. 1987).  A plaintiff must prove

each of the following to establish that the continuing violation exception to the

statute of limitations applies in a Section 2 case: first, that the defendant took some

overt action to maintain or expand its monopoly power during the limitations

period; and second, that the plaintiff suffered injury during the limitations period.

*See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1173 (3d Cir.

1993) (quoting jury instructions).

---

[4]     *See also id.* at 185 ("For more than fifteen years, Dentsply has operated under a policy that discouraged its dealers from adding *competitors'* teeth to their lines of products."; "The District Court found that Dentsply's business justification for Dealer Criterion 6 was pretextual and designed expressly to *exclude its rivals* from access to dealers.") (emphasis added).

Dentsply's enforcement of Dealer Criterion 6 with regard to Universal at Spoor Dental is sufficient proof of a continuing violation.  Dentsply nevertheless takes pains to contend that this example is irrelevant for legal reasons as well.  That contention is wrong for at least two reasons.  First, Dentsply admits that it enforced Dealer Criterion 6 as late as 2001.  Defendant Dentsply International Inc.'s Statement of Material Facts ¶ 25.   That by itself constitutes a continuing violation against Universal.  *See supra* § III.A.

Second, even if Dentsply had taken no overt action to enforce Dealer Criterion 6 with regard to any dealer during the relevant period, the continuing violation exception would apply.  The plaintiffs in *Lower Lake Erie* claimed that the defendants had initiated a boycott before the limitations period, which they maintained throughout that period.   *Id*. at 1153.  The Third Circuit affirmed a jury verdict for plaintiffs as to the continuing violation issue in particular:

> [Defendant's] further argument – that *Zenith* and its progeny limit recovery to damages resulting "from injury-causing overt acts" – has no merit because it fails to recognize, in circumstances such as here, that continuing and accumulating damage may result from intentional, concerted inaction. The purposeful nature of the inaction – here *an ongoing refusal to sell* or lease –obviously constitutes an injurious act, although perhaps not an overt one in the commonly-understood sense.

*Id.* at 1172 (emphasis added).  Dentsply's "ongoing refusal to sell" to dealers who sold its competitors' teeth during the relevant period likewise constitutes an "overt act" sufficient to toll the statute.

8

Dentsply seeks to evade the rule by claiming – absent citation to any case or even any reasoning – that competitors (as opposed to purchasers) may not invoke the continuing violation exception. But courts in both this circuit and others have held otherwise. *See, e.g., Hennegan v. Pacifico Creative Service, Inc.*, 787 F.2d 1299, 1301 (9th Cir. 1986); *Fleer Corp. v. Topps Chewing Gum, Inc.*, 415 F. Supp. 176, 181-82 (E.D. Pa. 1976). To the limited extent Dentsply relies on Third Circuit authority, that authority is decidedly inapposite.[5] The continuing violation exception applies.

### C. Tolling Attributable to the Government Action Encompasses Swaps and Rebates.

Dentsply's claim that its swaps and rebates fell outside the government action is plainly belied by the record in that action. *See supra* § II. Even if that were not the case, Universal would be entitled to rely on that action to toll the statute as to those particular actions.

The tolling provided for by 15 U.S.C. § 16(i) does not rely on strict congruity between the private action and the government action at issue. "The

---

[5]  In *Harold Friedman Inc. v. Thorofare Markets Inc.*, 587 F.2d 127 (3d Cir. 1978) – which Dentsply cites in this context – the Third Circuit in fact found a continuing violation. That holding was based in part on language immediately following that which Dentsply quotes: "Defendants] could quit causing the injury of which the plaintiff complains at any time, simply by not enforcing . . . the contract in question; hence, ... the violation is not final at its impact . . . or . . . by its nature permanent at initiation without further acts." *Id.* at 139 n.45 (citation and internal quotation marks omitted). Dentsply likewise perpetuated the injuries it caused by enforcing the policy in question throughout the relevant period.

private plaintiff is not required to allege that the same means were used to achieve the same objectives of the same conspiracies by the same defendants." *Leh v. General Petroleum Corp.*, 382 U.S. 54, 59 (1965). *See also id.* at 64 ("[W]e cannot conclude that a private claimant may invoke § 5(b) only if the conspiracy of which he complains has the same breadth and scope in time and participants as the conspiracy described in the government action on which he relies."), 65 ("To require more detailed duplication of claims would be to resurrect the collateral estoppel approach … rejected by this Court in *Minnesota Mining* [*& Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311 (1965)].").

Other courts have applied the tolling provision in its entirety in instances where private plaintiffs (like Plaintiffs in this case) alleged conduct above and beyond that alleged by the government. The court in *In re Antibiotic Antitrust Actions*, 333 F. Supp. 317 (S.D.N.Y. 1971) held that "there is no logical reason why tolling should not also follow where the plaintiff incorporates the entire Government case and alleges more in addition. In both instances the overlap between the Government case and the private allegations suggests that valuable practical benefits may flow to the private plaintiff from tolling the statute." *Id.* at 321 (citation omitted).[6] Dentsply cites no authority to the contrary.[7]

---

[6] *See also In re Master Key Antitrust Litig.*, 70 F.R.D. 29, 33-34 (D. Conn. 1976) (applying tolling provision to plaintiffs' horizontal conspiracy allegations where the government had alleged a vertical conspiracy).

**D.     Dentsply's Conduct Caused Antitrust Injury to Universal.**

Dentsply's claim that its actions did not cause Plaintiffs antitrust injury includes its admission that "[t]he Third Circuit held that Dealer Criterion 6 injured competition by foreclosing a significant portion of the market to Dentsply's *competitors*." Def's. Mem., at 31 (emphasis added). Universal was, of course, one of Dentsply's "competitors." That by itself is sufficient to belie Dentsply's claim in this context.

The claim is wrong for additional reasons as well. First, Dentsply effectively asks the Court to consider Dealer Criterion 6 without regard to its other actions. That is contrary to well-established law. As the Third Circuit held in *LePage's*, "the courts must look to the monopolist's conduct taken as a whole rather than considering each aspect in isolation." *LePage's*, 324 F.3d at 162.

Second, Plaintiffs persuasively dispute Dentsply's claim that it foreclosed only 23 percent of the relevant market. *See* Counter-Statement ¶ 28. And even if Dentsply's figure were accurate, it would be irrelevant. Threshold foreclosure levels are generally relevant only in Section 1 cases. Both of the cases Dentsply cites in this context are Section 1 cases. In fact, the court in *United States v. Microsoft Corp.*, 87 F. Supp. 2d 30 (D.D.C. 2000), *aff'd in part, rev'd in part*, 253

---

[7]     Defendant's reliance on *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 320 (4th Cir. 2007), is misplaced. The plaintiff in that case alleged violations in a market completely separate from that addressed in the government case. *Id*. at 321.

11

F.3d 34 (2001) (*cited in* Defs' Mem., at 31-32), explicitly distinguished the relevance of foreclosure levels in Section 1 and Section 2 cases.  *Id.* at 53.[8]

In a Section 2 case, "[t] he test is not total foreclosure, but whether the challenged practices bar a substantial number of rivals or severely restrict the market's ambit."  *Dentsply*, 399 F.3d at 191.  Courts examining vertical restraints under Section 2 have declined to set *any* particular percentage threshold that suffices.  *See LePage's*, 324 F.3d at 159 (noting that "[t]he Microsoft opinion does not specify what percentage of the browser market Microsoft locked up"), *id*. at 159-63 (discussing effects of 3M's exclusionary practices on the market, but not citing any percentage foreclosure).  The Third Circuit held that Dealer Criterion 6 was "a solid pillar of harm to competition."  *Dentsply*, 399 F.3d at 191.  That is all that is necessary for Universal to show in this context.

### E.    Dentsply's Swaps and Rebates Were an Inseparable Aspect of its Section 2 Violation.

Dentsply's claim that its swaps and rebates did not, by themselves, violate section 2 is substantially devoid of legal support – and for good reason.  Dentsply effectively asks the Court to examine those actions absent reference to its other exclusionary conduct.  That is contrary to black-letter law: "[A] monopolist is not free to take certain actions that a company in a competitive (or even oligopolistic)

---

[8]    *See also B & H Med., L.L.C. v. ABP Admin., Inc*., 526 F.3d 257, 266, 267 (6th Cir. 2008).

market may take, because there is no market constraint on a monopolist's behavior." *LePage's*, 324 F.3d at 151-52. *See also Dentsply*, 399 F.3d at 187 ("Behavior that otherwise might comply with antitrust law may be impermissibly exclusionary when practiced by a monopolist."). *See also Continental Ore*, 370 U.S. at 699 ("[P]laintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.").

Dentsply used rebates to lure dealers into exclusive arrangements and thereby gain an unfair advantage over its competitors. "Discounts conditioned on exclusivity are 'problematic' 'when the defendant is a dominant firm in a position to force manufacturers to make an all-or-nothing choice." *LePage's*, 324 F.3d at 158 (quoting 11 Herbert Hovenkamp, Antitrust Law ¶ 1807a, at 115-16 (1998)). In the government case, the Third Circuit accurately described Dentsply's rebates as part of its overall "aggressive sales campaigns," 399 F.3d at 185. As a result, the final judgment in that case prohibited Dentsply from offering "market share discounts," which were defined to include rebates and other incentives, in such a way as to undermine competition. *See* Counter-Statement ¶ 42 & Ex. F.

Dentsply efforts to distinguish *LePage's* – upon which the Third Circuit relied heavily in ruling against Dentsply in the government case – do not dictate a different result. First, the Third Circuit found it significant that Dentsply, like 3M,

13

engaged in a form of bundling by threatening to withhold its other products from dealers who sold other brands of competitive teeth. *See Dentsply*, 399 F.3d at 190 ("Dentsply threatened to sever access not only to its teeth, but to other dental products as well."), 195 ("Teeth are an important part of a denture, but they are but one component. The dealers are dependent on serving all of the laboratories' needs and must carry as many components as practicable. The artificial teeth business cannot realistically be evaluated in isolation from the rest of the dental fabrication industry."). Second, the government effectively proved that Dentsply's rebate program – like LePage's – "reinforced the exclusionary effect" of its other conduct. *LePage's,* 324 F.3d at 162.[9]

Finally, Dentsply cites no legal authority whatsoever as to its swaps. Given the factual record as those swaps, Plaintiffs need not cite any such authority. *See supra* § II.[10]

---

[9]   Dentsply also purports to distinguish *LePage's* by arguing that its rebates were smaller than those offered by 3M (Def. Br. at 34, 36). However, the Third Circuit in *LePage's* did not specify the percentage size of the rebates. In this case, Dentsply's rebates of 0.5 to 1 percent of a dealer's sales – in conjunction with Dealer Criterion 6, which had no parallel in *LePage's* – constituted a meaningful incentive for dealers to do business with Dentsply. *Cf. LePage's*, 324 F.3d at 158, 160 (rebates of 1 percent anticompetitive even absent exclusivity criterion). Dentsply cites no authority for the proposition that any threshold exists below which a rebate presumptively does not affect competition.

[10]   Plaintiffs are unable to cite any authority for the proposition that the relevant statute of limitations might be tolled as to Univac's state law claim. The Court may therefore consider Dentsply's summary judgment motion unopposed as to that claim only.

14

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court

deny Dentsply's Motion for Summary Judgment in its entirety.

Dated: July 16, 2009                                    Respectfully submitted,

_____                        _____
Paul R. Braunsdorf                                     Bart D. Cohen (bcohen@bm.net)
(pbraunsdorf@harrisbeach.com)                    Attorney No. PA 57606
HARRIS BEACH PLLC                              BERGER & MONTAGUE, P.C.
99 Garnsey Road                                       1622 Locust Street
Pittsford, New York 14534                          Philadelphia, PA 19103
Telephone: (585) 419-8800                         Telephone: (215) 875-3000
Facsimile: (585) 419-8801                          Facsimile: (215) 875-4604

Robert M. Stengel                                      Robert J. Nolan
(rms@rmstengelpc.com)                            (Rnolan@KaleidaHealth.Org)
Attorney No. PA 01911                              Attorney No. PA 19613
ROBERT M. STENGEL, P.C.                     93 West Afton Avenue
179 North Broad Street                              Yardley, PA  19067
Doylestown, Pennsylvania 18901               Telephone: (215) 880-2772
Telephone: (215) 230-9484                         Facsimile: (215) 321-1488
Facsimile: (215) 230-9564

*Counsel for Univac Dental Co.*                   *Counsel for Lactona Corporation*