# UNITED STATES DISTRICT COURT
# FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

UNIVAC DENTAL COMPANY, and
LACTONA CORPORATION

               Plaintiffs,

v.

DENTSPLY INTERNATIONAL, INC.,

               Defendant.

Civil Action No. 1: CV-07-0493
Hon. Christopher C. Conner

Filed Electronically

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN REPLY TO DEFENDANT'S RESPONSE TO THAT MOTION

Paul R. Braunsdorf
*Attorneys for Univac Dental Company*
HARRIS BEACH PLLC
99 Garnsey Road
Pittsford, New York  14534
(585) 419-8800

Bart D. Cohen
*Attorneys for Lactona Corporation*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania  19103
(215) 875-3000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ..................................................................................................... 1

FACTS ....................................................................................................................... 2

ARGUMENT ............................................................................................................. 4

    I    DENTSPLY SHOULD BE COLLATERALLY ESTOPPED BECAUSE DOING SO WILL ADVANCE THE POLICIES IN THE CLAYTON ACT OF CONSERVING JUDICIAL RESOURCES AND PROVIDING PRIVATE PLAINTIFFS THE OPPORTUNITY TO SEEK RECOVERY IN AN EFFICIENT MANNER FOR INJURIES ARISING FROM UNLAWUL AND ANTICOMPETITIVE ACTIVITY ....................... 4

    II    BECAUSE ALL ELEMENTS NECESSARY TO SUSTAIN A SECTION 2 CLAIM WERE DETERMINED IN THE GOVERNMENT'S ACTION, INCLUDING THE FACT OF UNIVERSAL'S INJURY, THIS COURT SHOULD GIVE COLLATERAL ESTOPPEL EFFECT TO THE FINDINGS IN THE GOVERNMENT'S ACTION ........................... 8

CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

Page

## Cases

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) .................................................. 4, 5

*U.S. v. Mendoza*, 464 U.S. 154 (1984) ............................................................................ 8

*United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 391 (D. Del. 2003) ................ 1

*United States v. Dentsply Int'l, Inc.*, 399 F.3d 181 (3d Cir. 2005) .................. passim

## Statutes

15 U.S.C. § 16(a) ................................................................................................................ 7

15 U.S.C. § 16(i) ................................................................................................................ 6

## Legislative Materials

H.R. Rep. No. 96-874, 96th Cong., 2d Sess. at 3 (1980),
   *as reprinted in* 1980 U.S.C.C.A.N. 2716, 2752, 2753 ......................................... 7

Sen. Rep. No. 619 (1955), *as reprinted in* 1955 U.S.C.C.A.N. 2328, 2329 ............ 6

## INTRODUCTION

Plaintiffs, who were joined as one company selling artificial teeth as Universal Dental Company ("Universal"), have moved for partial summary judgment granting collateral estoppel effect on those issues defendant Dentsply International, Inc. ("Dentsply") has already fully and fairly litigated in a prior suit brought by the United States. *See United States v. Dentsply Int'l, Inc.*, 399 F.3d 181 (3d Cir. 2005) ("*Dentsply II*"), *reversing* 277 F. Supp. 2d 391 (D. Del. 2003) ("*Dentsply I*"). This memorandum is submitted in further support of plaintiffs' motion and in reply to Dentsply's response opposing the motion.

In their memorandum of law in support of their motion, plaintiffs enumerated 29 "findings" as appropriate for collateral estoppel effect. Of these 29 findings, Dentsply disputes only three: findings 11, 25, and 28. Indeed, Dentsply begins its memorandum (p. 1) by agreeing that the bulk of plaintiffs' findings have been "conclusively determined." At a minimum, therefore, collateral estoppel effect should be granted with respect to at least those 26 findings that Dentsply does not dispute. Further, as explained in this memorandum of law, collateral estoppel effect should not be limited to those 26 findings.

## FACTS

Apparently recognizing the futility of arguing against application of collateral estoppel to plaintiffs' proposed findings, Dentsply spends three and one-half pages discussing irrelevant facts, facts which have no bearing on the outcome of this motion. Dentsply claims that "the following facts are relevant to plaintiffs' motion" (p. 2) and then sets out a narrative of Universal's business history. These facts cast no light on whether plaintiffs' motion should be granted.

The motion seeks to collaterally estop Dentsply from relitigating certain issues, identical to those Dentsply litigated in *Dentsply I* and *Dentsply II*, which are necessary for plaintiffs to sustain a claim under Section 2 of the Sherman Act. The relevant facts on this motion, therefore, are those dealing with the history of Dentsply's antitrust violations, the Government's case against Dentsply and the earlier court determinations finding anticompetitive action by Dentsply. Other facts Dentsply references are irrelevant to the motion including facts relating to Universal's alleged grandfather status. Facts about that status may relate to the question of the extent of plaintiffs' damages, which is for the trier of fact to determine, but not to the issues on which plaintiffs seek collateral estoppel, which include the fact that plaintiffs were damaged by Dentsply's unlawful actions.

Similarly, Dentsply's references to swaps and rebates are red herrings on this motion. Even though plaintiffs believe that these practices were anticompetitive, plaintiffs did not refer to them in their motion for partial summary judgment, nor do they seek collateral estoppel effect as to these practices. As argued in their opposition to Dentsply's summary judgment motion, plaintiffs believe there is a genuine issue of material fact as to whether these practices were anticompetitive. Plaintiffs pointed out that Dentsply's teeth swaps and rebates, when combined with Dealer Criterion 6, harmed Universal because even if Universal were grandfathered into a dealer, Dealer Criterion 6 effectively precluded Universal from doing any more business with that dealer once certain swaps and rebates had occurred.

The pertinent facts relating to this motion are those reflected in the 29 findings enumerated in plaintiffs' memorandum of law submitted in support of their motion, and these facts, of course, deal with the antitrust violations of Dentsply, the case made by the Government against Dentsply and the Court determinations which found Dentsply's actions to be anticompetitive. Dentsply's attempt to misdirect the Court's focus by referring to facts which do not bear on plaintiffs' motion bespeaks the weakness of the Dentsply position.

3

## ARGUMENT

### I

### DENTSPLY SHOULD BE COLLATERALLY ESTOPPED BECAUSE DOING SO WILL ADVANCE THE POLICIES IN THE CLAYTON ACT OF CONSERVING JUDICIAL RESOURCES AND PROVIDING PRIVATE PLAINTIFFS THE OPPORTUNITY TO SEEK RECOVERY IN AN EFFICIENT MANNER FOR INJURIES ARISING FROM UNLAWUL AND ANTICOMPETITIVE ACTIVITY.

As noted above, Dentsply admits that collateral estoppel is appropriate for the vast majority of plaintiffs' proposed findings. (p. 1)  In fact, throughout its brief, Dentsply takes issue with only three of the 29 proposed findings and makes no objection to a grant of collateral estoppel effect on the remaining 26 findings.

Dentsply does, however, make a broad and baseless argument that offensive collateral estoppel should not be applied because Universal adopted a "wait and see" attitude. (pp. 6-7)  Citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979), a Securities Act case, Dentsply suggests that offensive collateral estoppel does not promote judicial economy and is often inappropriate. (p. 6)  In fact, however, collateral estoppel is particularly appropriate in this case.

In *Parklane*, the Supreme Court said that collateral estoppel may not be appropriate if a party could easily have joined in the earlier action but decided against it. *Parklane*, 439 U.S. at 330.  In such a circumstance, judicial economy might not be fostered by allowing offensive collateral estoppel because it would

4

encourage a plaintiff to "wait and see." *Id.* The Court also pointed out that collateral estoppel may not be appropriate when it would be unfair to the defendant, such as a circumstance in which the defendant did not have an incentive to litigate fully the first action. *Id.* Because neither of these situations exists in the case at bar, Dentsply's judicial economy argument fails.

As to the fairness issue, Dentsply provides no reason it would be unfair to collaterally estop Dentsply. It is undisputed that Dentsply fully litigated in *Dentsply I* and *Dentsply II* the action brought against it by the Government.

As to Dentsply's argument that plaintiffs took a "wait and see" attitude, even assuming this were true, it should have no bearing on the question of whether application of the doctrine of offensive collateral estoppel is warranted. The Clayton Act contemplates exactly the type of "wait and see" procedure Dentsply criticizes. Because *Parklane* was not an antitrust case, the Supreme Court was not dealing with claims brought under the federal antitrust laws. Those laws contain specific provisions recognizing a private plaintiff's right to "wait and see" the outcome of a Government antitrust action.

In making its argument based on *Parklane*, Dentsply, of course, cannot make the argument that plaintiffs could have "easily" joined the Government's suit let alone joined it at all. Further, Dentsply cites no authority for the proposition that *Parklane* would even apply if the plaintiff could not have joined the prior suit.

5

Rather, Dentsply argues that Universal should have sued when it first complained of Dentsply's actions. Dentsply's preferences relating to plaintiffs' litigation timing or strategy are irrelevant to this motion for partial summary judgment. An analysis of the Clayton Act and its legislative history makes clear that a party should not be punished for waiting until after the Government concludes its antitrust suit. In fact, "waiting" for the conclusion of a Government antitrust suit is perfectly acceptable.

Under 15 U.S.C. § 16(i), the statute of limitations for a private antitrust suit is tolled during any Government suit and for one year thereafter. The Senate Report dealing with this provision acknowledges that private antitrust enforcement is often prohibitively expensive or burdensome. Sen. Rep. No. 619 (1955), *as reprinted in* 1955 U.S.C.C.A.N. 2328, 2329. The report states:

> Since the enactment of the Clayton Act, the bulk of private antitrust litigation has followed successful Government action, so that the judgment and decrees in the Federal proceedings could be used to establish a case. Amassing evidencing for antitrust cases would otherwise be a prohibitively expensive task for most plaintiffs.

Therefore, the Senate committee concluded that it was "highly desirable" to toll the statute of limitations and in turn "safeguard the rights of plaintiffs." *Id.* at 2332-33.

Plaintiffs certainly had the right to let the Government sue Dentsply and expose its anticompetitive practices. As the Clayton Act contemplates, the

6

judgment and decrees in the prior proceeding can be used by plaintiffs to establish their own case.

Collateral estoppel, therefore, is particularly appropriate in antitrust cases like the one at bar. Section 5(a) of the Clayton Act states that any Government suit brought against a private litigant is *prima facie* evidence in any later suit involving identical issues. 15 U.S.C. § 16(a). In fact, this law was amended in 1980 to clarify the appropriateness of collateral estoppel in these cases. Antitrust Procedural Improvements Act of 1980, Pub. L. No. 96-349 (1980), *amending* 15 U.S.C. § 16(a) (adding to subsection "a" the language that "nothing contained in this section shall be construed to impose any limitation on the application of collateral estoppel"). The House Report explains that the amendment was added to ensure "application of the [collateral estoppel] doctrine *to eliminate wasteful retrying of issues and reduce the costs of complex antitrust litigation to the courts and parties.*" H.R. Rep. No. 96-874, 96th Cong., 2d Sess. at 3 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 2716, 2752, 2753 (emphasis added).

Here, application of collateral estoppel will promote judicial economy. Were the doctrine unavailable, the parties would have to go through a lengthy trial to establish multiple issues already litigated and decided in *Dentsply I* and *Dentsply II*. This is exactly what the cited provisions of the Clayton Act are designed to prevent. In cases following *Parklane*, the Supreme Court has made it

clear that nonmutual offensive collateral estoppel, which is sought on the instant application, helps to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *U.S. v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct 568, 571 (1984). In fact, the Supreme Court in *Mendoza*, quoting *Standifer v. United States*, 447 U.S. 10, 24 (1980) opined that when the suit seeking collateral estoppel effect is between two private litigants, "no significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and there is no sound reason for burdening the courts with repetitive litigation." *Id.* at 159.

In the Government's case, Dentsply fully and fairly litigated the issues under Section 2 of the Sherman Act. Dentsply lost and should not be given an opportunity to re-litigate issues already decided.

## II

**BECAUSE ALL ELEMENTS NECESSARY TO SUSTAIN A SECTION 2 CLAIM WERE DETERMINED IN THE GOVERNMENT'S ACTION, INCLUDING THE FACT OF UNIVERSAL'S INJURY, THIS COURT SHOULD GIVE COLLATERAL ESTOPPEL EFFECT TO THE FINDINGS IN THE GOVERNMENT'S ACTION.**

To recover under Section 2 of the Sherman Act, plaintiffs must show that (1) Dentsply possessed monopoly power in the relevant market, (2) Dentsply

8

willfully acquired and maintained that monopoly power and (3) plaintiffs were injured by Dentsply's anticompetitive practices. It is undisputed that the first two elements are satisfied. It is only with respect to the element of plaintiffs' injury that Dentsply argues collateral estoppel should not be applied.

Dentsply claims that the Third Circuit did not find that plaintiffs were injured by Dentsply's actions and, therefore, contends that the plaintiffs must prove this in full in the current action. Dentsply also argues that if any injury was found by the Third Circuit, this finding was not "essential" to the Government's suit, thereby failing to meet one element needed to apply the collateral estoppel doctrine. (p. 7)

Although it argues at length that no injury to Universal was shown, Dentsply admits (pp. 9-10) that "Dealer Criterion 6" was used to harm Universal in at least one instance, dealing with the dental dealer DLDS. (pp. 9-10) The District Court and Third Circuit in *Dentsply I* and *Dentsply II* found that this specific instance of harm to Universal was part of Dentsply's anticompetitive conduct.[1] *Dentsply II*, 399 F.3d at 194.

Dentsply argues (p. 10) that the "impact of Dealer Criterion 6 on any individual competitor...necessarily depends on" showing (i) the extent that the competitor was grandfathered into Dentsply dealers and (ii) "the extent to which

---

[1] Plaintiffs are aware that the Dentsply has argued in its motion for summary judgment that its actions taken with respect to DLDS occurred outside the appropriate statute of limitations. Plaintiffs have fully responded to this issue in their opposition to Dentsply's motion.

9

the competitor would have been able to penetrate Dentsply dealers but for Dealer Criterion 6." Under Dentsply's own criteria, it should be collaterally estopped from arguing that Universal was not injured. As the Third Circuit found and as Dentsply admits, DLDS - - one of Dentsply's largest dealers - - "added Universal" and then proceeded to drop it after Dentsply threatened to enforce Dealer Criterion 6. *Dentsply II*, 399 F.3d at 194; *see also* Dentsply's Statement of Material Facts ("SMF") submitted in support of Dentsply's motion for summary judgment. (SMF 26 and 27) Clearly, therefore, Universal was not grandfathered at DLDS. Just as clearly, there can be no dispute that Universal could penetrate this Dentsply dealer as DLDS "added Universal...to meet customers' requests." *Dentsply II*, 399 F.3d at 194. Therefore, the Third Circuit found that Universal was harmed, and Dentsply should be collaterally estopped from arguing otherwise.

The amount of harm Universal suffered as a result of Dentsply's alleged actions involving DLDS or any other harm to Universal are matters for trial, and plaintiffs have never argued otherwise. Universal is not asking this court to collaterally estop Dentsply from arguing the extent to which its anticompetitive practices injured Universal. That was not part of the Government's suit, and Dentsply and plaintiffs should be given a chance to present evidence describing the extent of harm to Universal. What Universal is asking is that Dentsply be

collaterally estopped from arguing that Universal was not harmed at all by Dentsply's practices.

Dentsply admits that the Third Circuit held that Dealer Criterion 6 caused harm to competition by enabling Dentsply "to exclude competitors from the dealers' network, a narrow, but heavily traveled channel to the dental laboratories." *Dentsply II*, 399 F.3d at 190. Dentsply argues, however, that the Government was only required to show harm to competition, and therefore showing any harm to competitors was not "essential" to the litigation. (pp. 11-12) Then, contrary to its previous statement, Dentsply argues that the Government only showed harm to two competitors, Vita and Ivoclar, but not Universal.

It is inaccurate to say that the Government's litigation dealt only with Vita and Ivoclar. In its opinion, the Third Circuit listed Dentsply's main competitors in the market for artificial tooth sales, and Universal was one of the five largest competitors listed. *Dentsply II*, 399 F.3d at 184-85. Further, throughout the Third Circuit's opinion, the Court noted that Dentsply's practices harmed competition *as a whole* and never stated that they only harmed Vita and Ivoclar. *See, e.g.*, *Dentsply II*, 399 F.3d at 191: Dealer Criterion 6 "helps keep sales of competing teeth below the critical level necessary for *any* rival to pose a real threat to Dentsply's market share. As such, Dealer Criterion 6 is a solid pillar of harm to competition." (emphasis added).

11

Dentsply's argument that harm to competition does not mean harm to Universal does not reflect the Third Circuit's opinion. Universal was delineated as a competitor of Dentsply, and the Third Circuit found that Dentsply's actions harmed all of its rivals, *i.e.*, its competitors. As the Third Circuit put it, "Dentsply's grip on its 23 authorized dealers effectively choked off the market for artificial teeth, leaving only a small sliver for *competitors*." *Dentsply II* at 196 (emphasis added). In that same opinion, the Court referred to the fact that "[f]or more than fifteen years, Dentsply has operated under a policy that discouraged its dealers from adding *competitors'* teeth to their line of products." *Dentsply II* at 185 (emphasis added). Later, the Court went on to say that the "District Court found that Dentsply's business justification for Dealer Criterion 6 was pretextual and designed expressly *to exclude its rivals* from access to dealers." *Dentsply II* at p. 185 (emphasis added).

Dentsply itself acknowledged in its memorandum of law in support of its motion for summary judgment (p. 31) that the "Third Circuit held that Dealer Criterion 6 injured competition by foreclosing a significant portion of the market to Dentsply's *competitors*." (emphasis added) Dentsply used almost identical language in its Statement of Material Facts. *See* SMF 48.

As can be seen, therefore, the decision of the Third Circuit, as Dentsply itself recognized, makes it clear that Universal was harmed by Dentsply's actions.

Any doubt concerning this statement is affirmed by the fact that the District Court and the Third Circuit found a specific instance of harm to Universal.

At trial, both parties will be given a chance to show the extent of the harm Dentsply's anticompetitive actions caused Universal. Granting the partial summary judgment plaintiffs seek will not prevent this. Dentsply claims (p. 8) that there is "overwhelming evidence" of at most a negligible impact on Universal. While Dentsply may present evidence supporting this contention at trial, the argument does not bear on the collateral estoppel issue.

Therefore, plaintiffs do not agree that proposed "Finding 28" overstates the Third Circuit's findings.[2] Even assuming, as Dentsply argues (p. 10), that the effect of Dentsply's anticompetitive practices depends on the extent a company was grandfathered into Dentsply's dealer network and the extent that a company would have been able to penetrate this network but for those practices, evidence concerning those facts goes to the question of the extent Universal was injured by Dentsply's conduct, an issue for trial. The fact that Universal was injured was determined in *Dentsply II*.

---

[2] While Finding 11 may be too broad, plaintiffs would point out that whether Universal was "grandfathered" and to what extent will be resolved in this litigation. Plaintiffs acknowledge that the language in Finding 25 was addressing the District Court's discussion of Vita and Ivoclar's business practices. However, the Third Circuit's decision makes it clear (1) that Dentsply's policies were harmful to competitors and (2) that focusing on any different practices that a business could have taken is inappropriate as Dentsply "choked off the market for artificial teeth" through its unfair practices. *Dentsply II*, 399 F.3d at 196.

13

## CONCLUSION

The Government proved that Dentsply's actions foreclosed a significant portion of the artificial tooth market to Dentsply's competitors. Because Dentsply already has had a full opportunity to litigate certain issues regarding its violation of Section 2 of the Sherman Act, it should be collaterally estopped from re-litigating these same issues that are identical to those in this case. Therefore, plaintiffs' motion for summary judgment should be granted.

August 17, 2009                                              Respectfully submitted,

s/Paul R. Braunsdorf                                         s/Bart D. Cohen/PRB
Paul R. Braunsdorf                                           Bart D. Cohen
HARRIS BEACH PLLC                                            BERGER & MONTAGUE, P.C.
*Attorneys for Univac Dental Company*                        *Attorneys for Lactona Corporation*
99 Garnsey Road                                              1622 Locust Street
Pittsford, New York  14534                                   Philadelphia, Pennsylvania  19103
(585) 419-8800                                               (215) 875-3000

## CERTIFICATE OF SERVICE

I certify that on August 17, 2009, I caused to be filed electronically the following documents with the Clerk of the United States District Court for the Middle District of Pennsylvania.

1. Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Partial Summary Judgment and in Reply to Defendant's Response to That Motion using its CM/ECF system which would then electronically notify the following CM/ECF participants on this case:

1. Melissa H. Maxman

2. Bart D. Cohen

s/Paul R. Braunsdorf<br>
Paul R. Braunsdorf

226660 1226937.15