# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNIVAC DENTAL COMPANY, and | : | CIVIL ACTION NO. |
| LACTONA CORPORATION, | : | 1:07-CV-493 |
| | : | |
| **Consolidated Plaintiffs,** | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| DENTSPLY INTERNATIONAL, INC. | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

## I.      INTRODUCTION

This case is an antitrust action brought by two dental supply manufacturers, Univac Dental Company ("Univac") and Lactona Corporation ("Lactona"), against Dentsply International Inc., ("Dentsply") a major supplier of dentures throughout the United States. In this action, Univac and Lactona allege that over a span of many years Dentsply engaged in anti-competitive practices which caused them significant financial harm. The plaintiffs, therefore, seek damages from Dentsply as a remedy for these alleged antitrust violations.

We are now called upon to make further recommendations in this case which will help write the next chapter in this longstanding legal saga. Specifically, we are tasked with making recommendations regarding the resolution of a series of motions *in limine* which have been filed by Dentsply in this case. In making these

recommendations it bears repeating that in this case we most assuredly do not write upon a blank slate. Quite the contrary, Dentsply's business practices have already been the subject of extensive litigation by both the plaintiffs and the United States, before this court, see Univac Dental Co. v. Dentsply International Inc., No. 07-493, 2008 WL 2486134 (M.D. Pa. June 17, 2008), before the United States District Court for the District of Delaware, see United States v. Dentsply International Inc., 277 F. Supp. 2d. 387 (D. Del. 2003), and before the United States Court of Appeals for the Third Circuit, see United States v. Dentsply International Inc., 399 F.3d 181 (3d Cir. 2005). These practices have also been the subject of a prior report and recommendation filed by this Court on December 31, 2009. (Doc. 106.) These prior rulings and recommendations, which have thoroughly examined Dentsply's business practices spanning many decades, now shape and inform the future course of this lawsuit.

In our prior report and recommendation, we made recommendations regarding how this past litigation should shape the future course of the instant case. In particular, we addressed competing summary judgment motions filed by the parties. For its part, Dentsply sought a summary judgment in its favor finding that this action was now barred by the statute of limitations. Univac, in turn, moved for a partial summary judgment, seeking a finding that the doctrine of offensive non-mutual

collateral estoppel precluded Dentsply from contesting certain issues that were conclusively determined against it in the antitrust litigation previously brought by the United States Department of Justice. In addressing these motions, we recommended that the Court find that, while much had been written on the slate in this case, there were still meaningful and timely statements for a jury to make here. Specifically, with respect to Univac's motion for summary judgment we recommended that the Court find that, while the prior litigation has conclusively resolved the legal issue of the anti-competitive nature of Dentsply's past business practices, the plaintiffs must still prove how, and to what extent, they suffered identifiable damages as a result of these practices. Similarly, we recommended that the issue of whether Univac's and Lactona's federal antitrust claims were now time-barred presented questions of fact which must be submitted to a jury at trial.

Having made these recommendations with respect to the competing and dispositive motions submitted by the parties, we are now called upon to make recommendations regarding three motions *in limine* filed by Dentsply, which seek to limit or restrict proof of certain matters by Univac in this litigation. These motions *in limine* proceed from themes developed in the parties' summary judgment motions. Thus, at the outset, Dentsply advances an argument premised upon its statute of limitations claim, which seeks to exclude any evidence of anti-competitive activities

undertaken by Dentsply outside the period of the statute of limitations. (Doc. 98.)

Dentsply then urges the Court to limit Univac's proof of anti-competitive activities

solely to those activities which rested at the heart of the earlier antitrust case, the

application of Dealer Criterion 6, and exclude evidence of other allegedly anti-

competitive policies relating to product exchanges and rebates from the trial of this

case. (Doc. 100.) Finally, Dentsply turned to an issue on which Univac had enjoyed

prior litigation success, the preclusive effect of the prior antitrust decision on

Dentsply's ability to litigate issues that were resolved against it in this prior lawsuit

regarding the anti-competitive effect of Dealer Criterion 6. Noting that it has been

recommended that Dentsply should be precluded from contesting these issues relating

to the anti-competitive effect of these business practices, Dentsply argues that Univac

should then also be precluded from introducing extrinsic evidence of the anti-

competitive impact of Dealer Criterion 6 at trial. Instead, according to Dentsply,

Univac should simply rely upon the findings made in the prior federal antitrust action

to carry its burden of proof on these elements. (Doc. 99.)

For the reasons set forth below, it is recommended that Dentsply's motions *in
limine* be denied, with one exception. We recommend that the parties be required to

detail the extrinsic evidence which would be presented on the question of the anti-

competitive impact of Dealer Criterion 6, so that the Court and the parties can make

more fully informed judgments regarding the extent to which Rule 403 of the Federal Rules of Evidence permits limitation of this proof, which has already been the subject of a motion for partial summary judgment by Univac.

## II.   STATEMENT OF FACTS AND OF THE CASE

The factual background of this case is thoroughly detailed in the prior opinions of this court, see Univac Dental Co. v. Dentsply International Inc., No. 07-493, 2008 WL 2486134 (M.D. Pa. June 17, 2008), the United States District Court for the District of Delaware, see United States v. Dentsply International Inc., 277 F. Supp.2d. 387 (D. Del. 2003),  and the United States Court of Appeals for the Third Circuit, see United States v. Dentsply International Inc., 399 F.3d 181 (3d Cir. 2005). However, briefly the pertinent facts are as follows:

Dentsply International, Inc. is a Delaware Corporation with its principal place of business in York, Pennsylvania, which has long manufactured and sold artificial teeth for use in dentures, marketing these artificial teeth  to dental product dealers. These dealers, in turn, supply the teeth to dental laboratories, which fabricate dentures for sale to dentists. Because of advances in dental medicine, denture manufacturing is a static industry with a very limited growth potential. Within this narrow and static market Dentsply has long enjoyed a dominant market position. Indeed, the entire industry consists of only 12 to 13 denture manufacturers and Dentsply controls a

75%-80% market share of this specific, closely-defined market, making it 15 times larger than its next closest competitor. In contrast, the plaintiffs, Univac and Lactona, appear to have controlled only a very small fraction of this specialized market, approximately 1% to 2% of the market.

For more than fifteen years, beginning in the late 1980's, Dentsply adopted policies that discouraged its dealers from adding competitors' teeth to their lines of products. In 1993, as part of these policies, Dentsply adopted a practice referred to as "Dealer Criterion 6," which provided that in order to effectively promote Dentsply products, authorized dealers were forbidden from including further tooth lines in their product offerings. Because Dentsply operated on a purchase order basis with its distributors, its marketing relationship was essentially terminable at will. Therefore, these marketing practices, coupled with Dentsply's market dominance, gave particular force to Dealer Criterion 6's exclusive marketing requirement.

Dealer Criterion 6 was actively enforced by Dentsply against dealers with the exception of those who had carried competing products before 1993 and were "grandfathered" for sales of those products, and Dentsply rebuffed attempts by those particular distributors to expand their lines of competing products. Moreover, as this Court has previously observed, implicit in Criterion 6 was a threat that Dentsply would terminate its business relationship with any dealer who refused to abide by this

exclusive marketing agreement, a threat that "was particularly poignant" given Dentsply's uniquely compelling position in this specialized, and static, market.

In 1999 the Antitrust Division of the United States Department of Justice brought an action against Dentsply in the United States District Court for District of Delaware, challenging Dentsply's exclusive marketing practices, and alleging that those practices violated the Sherman Act's prohibition on monopolization. By 2003, the district court in Delaware found that Dentsply's business justification for Dealer Criterion 6 was pretextual and designed expressly to exclude its rivals from access to dealers. The Delaware district court nonetheless concluded that other dealers were available in the market and that other marketing methods like direct sales to laboratories were viable methods of reaching the market. Moreover, the district court found that Dentsply had not created a market with anti-competitive pricing, and that dealers were free to leave the network at any time. On the basis of these findings, the Delaware district court held that the Government failed to prove that Dentsply's actions "have been or could be successful in preventing 'new or potential competitors from gaining a foothold in the market.' " United States v. Dentsply International Inc., 277 F. Supp. 2d. at 453. Accordingly, despite recognizing the exclusionary motives that drove Dentsply's marketing practices, the district court concluded that the

Government had failed to establish violations of the Clayton Act and the Sherman Act.

The Government appealed this ruling, challenging the premises underlying this decision and arguing that a monopolist, like Dentsply, that prevents rivals from distributing through established dealers has maintained its monopoly and violated the Sherman Act. In 2005, the Court of Appeals agreed with the Government, reversed the ruling of the district court, held that Dentsply's practices violated the Sherman Act, and directed instead that judgment be entered for the United States on these antitrust claims.

This private antitrust action then followed two years later, in 2007, with Univac and Lactona suing Dentsply for damages arising out of these restrictive and anti-competitive marketing practices. (Doc. 1.) While much of Univac's complaint focused on the anti-competitive effects of Dealer Criterion 6, an issue that was thoroughly litigated by the Department of Justice, the complaint also alleged that Dentsply engaged in other anti-competitive activities relating to rebates and product exchange policies. As detailed in the complaint, these other policies also allegedly impeded market access for competing manufacturers. For example, according to the complaint:

30. Dental products dealers' exchange accounts with Dentsply further increased their economic disincentive to add competing tooth lines. These accounts reflected credit that Dentsply owed the dental products dealers against future purchases of teeth. A terminated dental products dealer could not apply its exchange account against future purchases (since it was not permitted to make any further purchases from Dentsply) and essentially forfeited most or all of the cash value of its exchange account to Dentsply.

31. In addition to threatening termination for dental products dealers opting to carry competing teeth, Dentsply has also engaged in the routine buy-out of competitors' artificial tooth products, including prefabricated artificial teeth manufactured by plaintiff, from dental products dealers. Specifically, Dentsply has offered plaintiff's dealers cash payments, rebates and/or Dentsply teeth in exchange for plaintiff's teeth.

(Doc. 1, ¶¶ 30 and 31.)

In the course of this litigation the parties filed competing summary judgment motions, which advanced contrasting views regarding how the past history of this case should frame the future of this litigation. For example, Dentsply sought a summary judgment in its favor arguing that this action was now barred by the statute of limitations. Univac, in turn, pursued a partial summary judgment motion, seeking a declaration that the doctrine of offensive non-mutual collateral estoppel precluded Dentsply from contesting certain issues that were conclusively determined against it in the antitrust litigation brought by the United States Department of Justice. On December 31, 2009, we issued a report and recommendation (Doc. 106),which

recommended that Dentsply's statute of limitations motion be granted with respect to the state claims brought by Univac and Lactona, but denied as to the federal antitrust claims, since there were factual matters which must be resolved as to the timeliness of this action which prevented the entry of a summary judgment in this case. With respect to the plaintiffs' motion for partial summary judgment based upon collateral estoppel, we recommended that this motion be granted, in part, in that Dentsply should be collaterally estopped from disputing the anti-competitive nature of its previously litigated business practices, but Univac and Lactona should still be required to prove that they were harmed in a tangible fashion by these practices. Therefore, to the extent that the plaintiffs sought to invoke the issue preclusion doctrine as to matters beyond the general anti-competitive nature of Dentsply's activities, and attempted to apply that doctrine to specific questions of causation and damages, we recommended that this motion be denied.

We now turn to the related issues raised by Dentsply's motions *in limine* which also address themes developed in the parties' summary judgment motions. In these motions Dentsply makes three claims: First, Dentsply makes a claim premised upon its statute of limitations argument, and seeks exclusion of any evidence of anti-competitive activities undertaken by Dentsply outside the period of the statute of limitations. (Doc. 98.) Dentsply then asks the Court to limit Univac's proof of anti-

competitive activities to those issues which rested at the heart of the earlier antitrust case, the application of Dealer Criterion 6, and exclude evidence of other allegedly anti-competitive policies relating to product exchanges and rebates. (Doc. 100.) Finally, Dentsply makes an argument based upon Univac's success in asserting the preclusive effect of the prior antitrust decision on Denstply's ability to litigate issues that were resolved against it in this prior lawsuit. Noting that it may be precluded from contesting these issues, Dentsply argues that Univac should also be precluded from introducing extrinsic evidence of the anti-competitive impact of effect of Dealer Criterion 6 at trial. Instead, according to Dentsply, Univac should simply rely upon the findings made in the prior federal antitrust action to carry its burden of proof on these elements. (Doc. 99.)

These issues have been fully briefed by the parties and are ripe for resolution. (Docs. 98-100, 102-104, 111, 112, 114.) For the reasons set forth below, it is recommended that Dentsply's motions *in limine* be denied, with one exception. We recommend that the parties should be directed to meet and confer regarding the scope of their proposed trial proof with respect to those matters which may be the subject of issue preclusion due to the prior antitrust litigation, in order to narrow any areas of disagreement and identify those specific disputed witnesses and exhibits which go to these issues. The parties should then provide the Court with a status report

identifying those factual matters which remain disputed, along with briefs regarding these disputed matters, so the Court can then make an informed decision regarding whether these narrowed issues can be resolved through a motion *in limine*.

## III.   DISCUSSION

### A.   Motions in Limine–Standard of Review

In considering motions *in limine* which call upon the Court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion. . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'." Abrams v. Lightolier Inc. 50 F.3d 1204, 1213 (3d Cir. 1995)(citations omitted); see Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994)(reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court, and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected is the philosophy which shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to

consider pertinent factual information while searching for the truth. The inclusionary quality of the rules, and their permissive attitude towards the admission of evidence, is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid., Rule 401.

Adopting this broad view of relevance it has been held that: "Under [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' [Therefore] 'It follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.'." Frank v. County of Hudson, 924 F.Supp. 620, 626 (D.N.J. 1996) citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir.1994) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence, favoring the admission of potentially probative proof in all of its forms, is further buttressed

by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid., Rule 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir. 1996)(citations omitted).

While these principles favoring inclusion of evidence are subject to some reasonable limitations, even those limitations are cast in terms which clearly favors admission of relevant evidence over preclusion of proof in federal proceedings. Thus, Rule 403, which provides grounds for exclusion of some evidence, describes these grounds for exclusion as an exception to the general rule favoring admission of relevant evidence, stating that:

> Although relevant, evidence may be excluded if its probative value **is substantially outweighed** by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

F. R. Evid., Rule 403 (emphasis added).

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding, unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

These broad principles favoring the admission of relevant evidence also shape and define the scope of this Court's discretion in addressing motions *in limine* like those filed by Dentsply here, which seek a pre-trial ruling excluding such evidence on relevance and prejudice grounds. In the past the United States Court of Appeals for the Third Circuit has cautioned against such preliminary and wholesale exclusion of evidence , noting that it has "made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine."* Walden v. Georgia-Pacific Corp*.,* 126 F.3d 506, 518, n. 10 (3d Cir. 1997). The reason for this caution is evident: oftentimes a court "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." Id.; see also In re Diet Drugs Products Liability Litigation*,* 369 F.3d 293, 314 (3d Cir.

2004). As the Court of Appeals has observed when advising against excessive reliance on motions *in limine* to exclude evidence under Rule 403:

> [M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation. American Home, 753 F.2d at 324; cf. Luce v. United States, 469 U.S. 38, 41-42, 105 S.Ct. 460, 463-64, 83 L.Ed.2d 443 (1984) (holding that criminal defendant must testify to preserve claim of improper impeachment with prior conviction) ("The [ *in limine* ] ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). This is particularly true when the evidence is challenged as irrelevant or prejudicial; the considerations weighed by the court will likely change as the trial progresses. See Rosenfeld v. Basquiat, 78 F.3d 84, 91 (2d Cir.1996) ("Unlike rulings that involve balancing potential prejudice against probative value, the ruling in the present case was not fact-bound and no real purpose other than form would have been served by a later objection."). We have also made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*. "[A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial-oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper." Paoli I, 916 F.2d at 859; see also In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 747 (3d Cir.1994) (" Paoli II "). Under these and similar circumstances, if a district court makes a tentative pre-trial ruling, it has the opportunity to "reconsider [its] in limine ruling with the benefit of having been witness to the unfolding events at trial." United States v. Graves, 5 F.3d 1546, 1552 (5th Cir.1993).

Walden. 126 F.3d at 518 n.10.

Thus, the principles which guide our consideration of motions *in limine* that seek the exclusion of evidence on Rule 402 relevance or Rule 403 undue prejudice grounds consistently urge that courts to exercise their broad discretion sparingly in this field, and avoid precipitous pre-trial rulings excluding evidence on these relevance and prejudice grounds. It is against the backdrop of these guiding legal tenets that we consider Dentsply's motions *in limine*.

      **B.**     **Dentsply May Not Secure a Pre-trial Ruling Limiting Univac's Evidence to Acts Occuring Within the Period of the Statute of Limitations**.

Denstply's first motion *in limine* springs from an argument which the defendant unsuccessfully advanced in a motion for summary judgment. In that motion Dentsply sought dismissal of Univac's and Lactona's complaint on statute of limitations grounds, arguing as a matter of law that it had taken no anti-competitive actions against the plaintiffs within the period of the statute of limitations.

We recommended that this motion be denied, since in our view disputed factual issues concerning the conduct of Dentsply during the limitations period precluded judgment as a matter of law on this question. In reaching this conclusion we acknowledged that under federal antitrust law, the statute of limitations initially begins to run "when a defendant commits an act that injures a plaintiff's business."

Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971). Noting, however, that the Supreme Court has held that the statute of limitations is subject to a "continuing violations" exception, we concluded that in order to show that the continuing violations doctrine applies in a case brought under section 2 of the Sherman Act, a plaintiff must show that: (1) the defendant took some overt action to maintain or expand its monopoly power during the limitations period; and (2) the plaintiff suffered injury during the limitations period. In re Lower Lake Erie Iron Ore Antitrust Litig., 998 F.2d 1144, 1173 (3d Cir. 1993); see also Pa. Dental Ass'n v. Med. Serv. Ass'n, 815 F.2d 270, 278 (3d Cir. 1987) ("[E]ach time a plaintiff is injured by a continuing conspiracy to violate the antitrust laws, a new cause of action for damages accrues."). In this case, it was our view that the question of the defendant's actions and the plaintiff's injuries during the limitations period was a disputed factual question which must be submitted to the trier of fact for resolution.

Having been unsuccessful in its efforts to secure dismissal of this action on statute of limitations grounds, Dentsply now argues, in a summary fashion, that Univac and Lactona should be limited at trial solely to presenting evidence relating to wrongdoing within the limitations period. (Doc. 98.) Thus, Dentsply invites the Court to use the statute of limitations as a benchmark for making judgments regarding evidentiary relevance.

It is recommended that the Court decline this invitation and deny this motion *in limine,* since Dentsply's motion fundamentally misconstrues the role of the statute of limitations. The statute of limitations is a procedural safeguard which protects parties from the vagaries of endless litigation of past alleged wrongs by requiring plaintiffs to bring their claims in a timely fashion. Thus, at bottom, "[t]he statute of limitations is a defense ... , not a rule of evidence. Therefore, ... [it] has no bearing on the admissibility of evidence." Black Law Enforcement Officers Ass'n v. City of Akron, 824 F.2d 475, 483 (6th Cir. 1987); see also Fitzgerald v. Henderson, 251 F.3d 345, 365 (2d Cir. 2001); Vereen v. Woodland Hills School District, 06-CV-462, 2008 WL 794451, *23 (W.D.Pa. March 24, 2008). Indeed, recognizing this fundamental truth, the United States Court of Appeals for the Third Circuit has held that where, as here, a party alleges that it has been victimized by a continuing violation which occurs in part outside the statute of limitations, it is an abuse of discretion for the trial judge to strictly limit the proof solely to the period of the statute of limitations and prevent the presentation of evidence relating to events which were part of the continuing violation but occurred outside the statute of limitations period. See, e.g., West v. Philadelphia Electric Co., 45 F.3d 744 (3d Cir. 1995); Pick-Mt. Laurel Corp. v. NLRB, 625 F.2d 476 (3d Cir. 1980).

These principles are directly applicable here and are fatal to Dentsply's first motion *in limine*. While Univac must present evidence of actions by the defendant and harm to the plaintiffs within the limitations period to defeat the statute of limitations bar at trial, its proof cannot be strictly restricted to the limitations period. Instead, as part of its proof of what it alleges were continuing violations Univac and Lactona are entitled to present evidence relating to conduct which spans beyond the statute of limitations.

## C. Dentsply Is Not Entitled to a Pre-trial Ruling Precluding Univac and Lactona from Presenting Evidence Relating to Other Allegedly Anti-Competitive Practices Like Product Exchanges and Rebates.

Dentsply has filed a second, separate motion *in limine* which seeks to exclude evidence of the defendant's involvement in product exchanges and rebate practices that Univac claims deterred competition and restricted its access to this narrowly defined market. With respect to this motion Dentsply advances a threefold argument, asserting: First, that these practices were not part of the original antitrust litigation brought by the Department of Justice for purposes of tolling the statute of limitations; Second, that these practices are inadmissible because they fall outside the statute of limitations; and Third, that the alleged practices were not anti-competitive in nature. On the basis of these assertions, Dentsply urges the Court to limit proof at trial solely

to the anti-competitive impact of Dealer Criterion 6, and not allow the plaintiffs to present evidence regarding these other practices pleaded by the plaintiffs in their complaint.

In our view none of these assertions can withstand close scrutiny. At the outset, while it is clear that Dealer Criterion 6 was the primary focus of the Department of Justice antitrust litigation against Dentsply it is also equally clear that this litigation involved some consideration of tooth exchange programs and rebates, issues that were explicitly addressed by the district court in the prior antitrust litigation. See United States v. Dentsply International, Inc. 277 F.Supp. 2d. 387, 431 (D.Del. 2003).[1] Moreover, given the substantial legal and factual overlap between the Department of Justice action and the instant lawsuit, Dentsply errs when it suggests as a legal matter that the tolling provisions of the of the antitrust lawsuits would not extend the statute on these particular allegations since they were not central to the government's antitrust case.

---

[1]In its reply brief Dentsply argues that the rebate and exchange issues considered in this litigation differed from those which Univac proposes to present in the instant case. To the extent that these issues may not be identical, this fact does not change our view that Univac should be entitled to prove what it alleged in its complaint, and that Dentsply may not assert the statute of limitations as an evidentiary bar to this particular proof. Of course, Univac still must prove acts and injuries within the applicable limitations period.

Quite the contrary, the tolling provided for by 15 U.S.C. § 16(i) when the Department of Justice is pursuing an antitrust action does not require absolute factual and legal congruence between the private lawsuit and government litigation. In fact, such absolute legal congruence is rarely possible in such complex litigation. Therefore, a "private plaintiff is not required to allege that the same means were used to achieve the same objectives of the same conspiracies by the same defendants." Leh v. General Petroleum Corp., 382 U.S. 54, 59 (1965). Nor may a private claimant "invoke § 5(b) only if the conspiracy of which he complains has the same breadth and scope in time and participants as the conspiracy described in the government action on which he relies." Id. at 63. Accordingly, since complete legal and factual symmetry is not required between government and private antitrust actions, it follows that these tolling provisions should apply whenever a private plaintiff brings an antitrust action arising out of the same course of conduct as the government's litigation, even if the parties allege somewhat different means of achieving the same anti-competitive goal. See In re Antibiotic Antitrust Actions, 333 F.Supp. 317, 321 (S.D.N.Y. 1971),("there is no logical reason why tolling should not also follow where the plaintiff incorporates the entire Government case and alleges more in addition. In both instances the overlap between the Government case and the private allegations suggests that valuable practical benefits may flow to the private plaintiff from tolling

the statute." ). See also In re Master Key Antitrust Litigation, 70 F.R.D. 29, 33-34 (D. Conn. 1976) (applying tolling provision to plaintiffs' horizontal conspiracy allegations where the government had alleged a vertical conspiracy).

Furthermore, this motion *in limine* suffers from the same flaw as Dentsply's first motion *in limine*. It miscontrues the statute of limitations as a rule of evidence rather than a procedural safeguard for timely litigation of claims. Since it is well-settled that it is an abuse of discretion for a trial judge to strictly limit proof solely to the period of the statute of limitations and prevent the presentation of evidence relating to events which were part of the continuing violation but occurred outside the statute of limitations period; see, e.g., West v. Philadelphia Electric Co., 45 F.3d 744 (3d Cir. 1995); Pick-Mt. Laurel Corp. v. NLRB, 625 F.2d 476 (3d Cir. 1980), Dentsply simply cannot rely upon the statute of limitations to bar consideration of evidence of these rebate and product exchange practices by asserting that these practices fall outside the limitations period.

Finally, to the extent that Dentsply argues that these practices should be excluded from evidence because they were not demonstrably anti-competitive or harmful to Univac and Lactona, these arguments fail to consider the broad definition of relevant evidence in Rules 401 and 402 of the Federal Rules of Evidence. This contention also neglects to take into account the Supreme Court's admonition that

courts should refrain from looking at only isolated pieces of evidence to prove an antitrust conspiracy. As the Court observed in <u>Continental Ore v. Union Carbide and Carbon Corp.</u>, 370 U.S. 690,699 (1962), " In cases such as this, plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." Furthermore, to the extent that Dentsply insists that this evidence should be excluded because it can thoroughly rebut any suggestion that these practices had an anti-competitive effect or caused harm to Univac and Lactona, this argument does not provide a basis for complete exclusion of this evidence. Rather, it defines a factual issue which must be presented, and weighed, by a jury.

In short, given the binding guidance of the court of appeals that "rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*", <u>Walden v. Georgia-Pacific Corp</u>. 126 F.3d at 518 n.10, we cannot say that any of the arguments advanced by Dentsply in this motion set forth sufficient grounds to justify the wholesale exclusion of this product exchange and rebate evidence at trial. Rather, determinations of the relevance and probative value of this proof must await the trial of this matter.

        D.      **<u>The Parties Should Be Required to Provide a More Detailed Offer of Proof Regarding What Additional Evidence Should</u>**

## Be Introduced Relating to Matters Which Were Previously Resolved in the Prior Antitrust Litigation

Finally Dentsply has filed a motion *in limine* that invites this Court to consider the trial implications of our prior recommendation that the defendant be precluded from re-litigating factual matters that were conclusively resolved against it in the prior antitrust litigation. Noting that it may be precluded from contesting these issues relating to the anti-competitive effect of its dealer policies, Dentsply argues that Univac should then also be precluded from introducing extrinsic evidence of the anti-competitive impact of effect of Dealer Criterion 6 at trial. Instead, Denstply contends that Univac should simply rely upon the findings made in the prior federal antitrust action to carry its burden of proof on these elements. (Doc. 99.) According to Dentsply, allowing a one-sided presentation of evidence on these issues by Univac, after precluding Dentsply from contesting factual matters relating to the anti-competitive effect of Dealer Criterion 6, would be both prejudicial, and unnecessary, since these matters were previously conclusively determined, and are for the most part stipulated to by the defendant.

Rule 403 of the Federal Rules of Evidence speaks directly to the concerns that inform Dentsply's motion, stating that evidence may be excluded when its probative value is substantially outweighed by "considerations of undue delay, waste of time,

or needless presentation of cumulative evidence." Fed. R. Evid. 403. Moreover, Dentsply's concerns are particularly appropriate here since permitting extensive litigation of those matters which were the subject of issue preclusion at Univac's request could undermine the important "common goals of judicial economy, predictability, and freedom from harassment....' <u>Gregory v. Chehi</u>, 843 F.2d 111, 116 (3d Cir.1988), which motivate the collateral estoppel doctrine. Furthermore, permitting extensive litigation on essentially undisputed and acknowledged facts may constitute an abuse of discretion when such litigation gives rise both to undue prejudice, and undue delay or needless presentation of cumulative evidence, something which has long been recognized by the Supreme Court. <u>See Old Chief v. United States</u>, 519 U.S. 172 (1997)(abuse of discretion to spurn stipulation on undisputed fact of prior conviction and permit extrinsic proof). All of these considerations favor some reasonable limitations on this particular aspect of the proof in this case, where some of these facts have already been conclusively determined through prior litigation.

In this case, applying the prerequisites of issue preclusion to the legal issues raised in this lawsuit we have previously recommended that the Court find that Dentsply is collaterally estopped from contesting the general elements of an antitrust violation in this case by this prior litigation. Thus, issue preclusion would prevent

Dentsply from disputing either the issue of: (1) Dentsply's possession of monopoly power; or, (2) the question of Dentsply's conscious maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. United States v. Dentsply International, Inc. 399 F.3d at 186. As to the additional elements of proof that Univac must show to sustain this private antitrust action; namely, "[proof of]: (1) a causal relationship between the antitrust violation and the alleged injury, and, (2) measurable damage to his business or property." Deaktor v. Fox Grocery Co., 475 F.2d 1112, 1116 (3d Cir. 1973), we recommended that the Court find that litigation of these issues is not precluded as a matter of law by the prior action. Rather, the parties should be permitted to fully litigate these questions of causation and damages.

These prior recommendations help shape our current views regarding evidentiary rulings under Rule 403 relating to proof which touches upon these matters which may be the subject of issue preclusion. In conducting the balancing assessment mandated by Rule 403 of the probative value of particular evidence against the considerations of prejudice, undue delay, and needless presentation of cumulative proof, we believe that the balance may weigh in favor of Dentsply on those factual matters which were previously conclusively determined in this litigation and relate solely to the issues concerning to the general anti-competitive effect of Dealer

27

Criterion 6. In contrast, Rule 403's restrictions on presentation of cumulative evidence should not restrict presentation of proof relating to questions of causation and damages, matters which must still be fully litigated.

Yet, while Dentsply's motion identifies a legitimate and valid concern several factors prevent a full resolution of this concern at present. At the outset, it is not possible to resolve this concern because, while the parties have argued with great passion their respective views on the law, they have not detailed what actual evidence is in dispute in this case. The issue of identifying what particular evidence Univac may wish to introduce on these related issues of anti-competitive impact, causation and damages is of more than academic interest here since there is likely some body of evidence which may be relevant to both the general issues of anti-competitive conduct, which are the subject of issue preclusion, and the more specific issues of causation and damages, which are still subjects of full litigation at trial.

These determinations cannot be made in a vacuum, and the exercise of inviting the Court to resolve these issues through a motion *in limine* without some further factual development underscores the wisdom of the observation "that Rule 403 is a trial-oriented rule" which is not particularly amenable to such motions. Walden v. Georgia-Pacific Corp. 126 F.3d at 518 n.10. While these considerations lead us to conclude that Dentsply's motion *in limine* cannot be granted in its present form, they

also strongly suggest that the Court should adopt a process to identify, and address, the evidentiary issues which may arise in reconciling the parties' need to present evidence on those issues which are not the subject of issue preclusion against the legitimate concerns of prejudice, delay and needless presentation of cumulative evidence which may arise if extensive evidence is presented on matters which have been found to the subject of issue preclusion.

In order to properly exercise the Court's discretion under Rule 403, it is therefore recommended that the plaintiffs be directed to confer with the defendant regarding the scope of their proposed trial proof in this area, with an eye towards narrowing any areas of disagreement and identifying those specific disputed witnesses and exhibits which relate to these issues. Armed with this information the Court can then make an informed decision regarding whether these narrowed issues can be resolved through a motion *in limine*, or must await rulings at trial since the Court may not be able to "fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." Walden v. Georgia-Pacific Corp. 126 F.3d at 518 n.10.

## IV.   RECOMMENDATION

For the reasons set forth above, it is **RECOMMENDED** that the Court **DENY** Dentsply's motions *in limine*, (Docs. 98, 99 and 100), but with respect to the motion

*in limine* relating to issues previously litigated and resolved against Dentsply (Doc. 99) the parties should be directed to meet, and confer, regarding the scope of their proposed trial proof within respect to matters which may be the subject of issue preclusion due to prior antitrust litigation, in order to narrow any areas of disagreement and identify those specific disputed witnesses and exhibits which go to these issues. The parties should then provide the Court with a status report identifying those factual matters which remain disputed, along with briefs regarding these disputed matters, so the Court can then make an informed decision regarding whether these narrowed issues can be resolved through a motion *in limine*.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.

S/Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

Dated: January 15, 2010