IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNIVAC DENTAL COMPANY, and LACTONA CORPORATION,** | : : : | **CIVIL ACTION NO. 1:07-CV-0493** |
| Plaintiffs | : : | (Judge Conner) |
| v. | : : | |
| **DENTSPLY INTERNATIONAL, INC.,** | : : | |
| Defendant | : | |

## MEMORANDUM

Presently before the court are two motions for summary judgment (Docs. 63, 64) and the magistrate judge's report (Doc. 106) recommending that both motions be granted in part and denied in part. Plaintiffs Univac Dental Company ("Univac") and Lactona Corporation ("Lactona"), and defendant Dentsply International, Inc. ("Dentsply"), have filed objections to the magistrate judge's report and recommendation ("R&R"). For the reasons set forth below, the court will adopt the R&R.

I. **Factual Background & Procedural History**

Plaintiffs are two dental supply manufacturers. They complain that defendant—the dominant manufacturer and supplier in the market for artificial teeth, used in dentures—has engaged in anti-competitive practices, in violation of, *inter alia*, § 2 of the Sherman Act. Plaintiffs contend that defendant's alleged antitrust violations have harmed them—or, more directly, harmed Universal Dental Company ("Universal"), plaintiffs' predecessor and one of defendant's competitors. The complained-of practices include Dentsply's adoption and enforcement of a

policy ("Dealer Criterion 6") that prohibited dental product dealers from adding competitors' artificial teeth to their product lines. Dealer Criterion 6 restricted dealers from expanding their offerings of competitive lines of teeth, but it did not completely preclude them from selling competing products. To the extent that dealers carried competing products before Dealer Criterion 6 was adopted, continued sales of those products were permitted.

The above-captioned case is not the first legal proceeding challenging Dentsply's business practices and policies. They were also challenged by the antitrust division of the United States Department of Justice in 1999. (Doc. 106 at 5-6); see United States v. Dentsply Int'l, Inc., 277 F. Supp. 2d 387 (D. Del. 2003), United States v. Dentsply Int'l, Inc., 399 F.3d 181 (3d Cir. 2005). The basis of plaintiffs' motion for partial summary judgment is that the prior litigation has conclusively resolved some of the issues presented in the instant case. Defendant has also moved for summary judgment, based on the alleged insufficiency of plaintiffs' evidence.

The magistrate judge recommends that defendant's motion (Doc. 64) for summary judgment be granted with respect to plaintiff's state law claims and denied with respect to plaintiffs' federal antitrust claims. He also recommends that plaintiffs' motion (Doc. 63) for partial summary judgment be granted to the extent that it precludes defendant from re-litigating issues concerning the anti-competitive nature of its business practices but denied to the extent that plaintiffs seek to avoid litigating the questions of damages and causation.

## II. Standard of Review

### A. Standard of Review for Cross-Motions for Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

In the instant matter, the parties have filed cross-motions for summary judgment. According to the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). Each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions. See Facenda v. N.F.L. Films, Inc., 542

3

F.3d 1007, 1023 (3d Cir. 2008). When reviewing each motion, the court is bound to view the evidence in the light most favorable to the nonmovant. FED. R. CIV. P. 56; United States v. Hall, 730 F. Supp. 646, 648 (M.D. Pa. 1980).

### B. Standard of Review for a Magistrate Judge's Recommendation

Where objections to a magistrate judge's report and recommendation are filed, the court must perform a *de novo* review of the contested portions of the report. Supinski v. United Parcel Serv., Civ. A. No. 06-0793, 2009 WL 113796, at *3 (M.D. Pa. Jan. 16, 2009) (citing Sample v. Diecks, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989); 28 U.S.C. § 636(b)(1)(c)). "In this regard, Local Rule of Court 72.3 requires 'written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for those objections.'" Id. (citing Shields v. Astrue, Civ. A. No. 07-417, 2008 WL 4186951, at *6 (M.D. Pa. Sept. 8, 2008)).

Where parties have not filed objections to a magistrate judge's report and recommendation, the Federal Magistrates Act does not require a district court to review the report before accepting it. Thomas v. Arn, 474 U.S. 140, 149 (1985). As a matter of good practice, however, the Third Circuit expects courts to "afford some level of review to dispositive legal issues raised by the report." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987). The advisory committee notes to Rule 72(b) of the Federal Rules of Civil Procedure indicate that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72(b), advisory committee notes; see also Tice v. Wilson, 425 F. Supp. 2d 676, 680 (W.D. Pa.

2006) (holding that the court's review is conducted under the "plain error" standard); Cruz v. Chater, 990 F. Supp. 375-78 (M.D. Pa. 1998) (holding that the court's review is limited to ascertaining whether there is "clear error on the face of the record"); Oldrati v. Apfel, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998) (holding that the court will review the report and recommendation for "clear error").

### III. Discussion

Plaintiffs' objections (Doc. 118) to the R&R include the following arguments: (1) that the court should give preclusive effect to the Third Circuit's determination that defendant's actions injured Universal; and (2) that the court should adopt additional proposed findings. Defendant's objections (Doc. 119) to the R&R are as follows: (1) that there are no genuine issues concerning the application of the statute of limitations to plaintiffs' claims; (2) that there are no genuine issues regarding whether Dentsply's conduct injured plaintiffs; (3) that plaintiffs have failed to create a triable issue of fact with regard to the allegation that Dentsply's tooth swaps and exclusivity rebates violated antitrust laws; and (4) that the court should decline to adopt certain findings recommended by the magistrate judge. The court will address each of these arguments in turn. The court will also review the remaining portions of the R&R for clear error.

#### A. Has Damage to Plaintiffs Been Conclusively Established?

Plaintiffs argue that, in United States v. Dentsply Int'l, Inc., 399 F.3d at 181, the Third Circuit "made it clear that Dentsply's actions harmed all of its competitors[,]" including Universal, plaintiffs' predecessor. (Doc. 118 at 8). In other words, plaintiffs object to the magistrate judge's recommendation that the parties

5

should present to the factfinder the issues of causation and damages. Although defendant does not dispute that the Third Circuit referenced harm suffered by "competitors," defendant asserts that the Third Circuit never held that the harm affected *all* competitors or plaintiffs specifically. (Doc. 125 at 5-6). Defendant maintains that the court should require plaintiffs to prove damages, because the prerequisites for issue preclusion are not satisfied.

Plaintiffs assert that the magistrate judge improperly relied on <u>Jean Alexander Costmetics, Inc. v. L'Oreal USA, Inc.</u>, 458 F.3d 244 (3d Cir. 2006), in reaching its conclusion that collateral estoppel does not operate to resolve the issues of causation and damages in the instant case. (<u>See</u> Doc. 118 at 11-15; Doc. 106 at 34-35). In <u>Jean Alexander</u>, the court expressed concern that applying issue preclusion principles—specifically, non-mutual offensive collateral estoppel—too freely would create a general incentive for plaintiffs to "wait and see" if another plaintiff obtains a favorable judgment in an earlier action, rather than promptly asserting their own claims. To dismiss this concern as it relates to the instant case, plaintiffs aver that "the Clayton Act specifically contemplates and encourages such a 'wait and see' by private plaintiffs when the United States has brought an action." (Doc. 118 at 11). Notably, the Clayton Act explicitly permits the application of collateral estoppel, and it tolls the statute of limitations for private antitrust lawsuits during any government action and for one year thereafter. (<u>Id.</u> at 11-13.) Thus, plaintiffs seek to distinguish <u>Jean Alexander</u>, a trademark case, from the instant case, in which a violation of the Clayton Act is alleged. (Doc. 127 at 10).

6

Plaintiffs arguments on these issues are unavailing. Although it is true that the magistrate judge relied on <u>Jean Alexander</u> and discussed the risk of encouraging plaintiffs to "wait and see," the recommendation that the parties litigate the issues of causation and damages in the instant case is not solely attributable to these considerations. Significantly, the magistrate judge also concluded that "the issues of causation and damages for these particular plaintiffs were not fully litigated in the prior action" and that "it cannot be said that 'the determination [of these issues . . . was] essential to the prior judgment[.]'" (Doc. 106 at 42). Accordingly, the prerequisites for collateral estoppel were not satisfied. (<u>See</u> <u>id.</u> at 39, 42). The court agrees with these conclusions of the magistrate judge. Applying issue preclusion in the manner requested by plaintiff would therefore be improper. The parties must litigate both causation and damages.

Plaintiffs also argue that the magistrate judge conflated the issues of causation and damages. According to plaintiffs, his report failed to differentiate the "fact of damage" from the amount of damage. (Doc. 118 at 16). Ostensibly, plaintiffs posit that, through the operation of collateral estoppel, the Third Circuit's "repeated statements that Dentsply's violation had harmed its competitors, one of which was Universal[,]" (Doc. 118 at 18), establish the "fact of damage." Defendant argues that the Third Circuit's statements have no such effect. (Doc. 125 at 10, n.1). The court is not persuaded that collateral estoppel should apply to the statements to which plaintiff refers. As discussed above, the court agrees with the magistrate judge's conclusions that the prerequisites for issue preclusion are not satisfied with

7

respect to the issues of causation and damages.  Nor can the court conclude that the relatively narrow issue of the "fact of damage"—that is, the fact that Universal was damaged—was "fully litigated in the prior action" or was "essential to the prior judgment[.]"  (See Doc. 106 at 42).  Hence, collateral estoppel does not operate to establish the fact of damage, and plaintiffs must prove damage in the instant case.

### B. Should the Court Adopt Additional Findings?

The magistrate judge recommended that four of plaintiff's proposed findings not be adopted: findings 11, 25, 27, and 29.  Plaintiff asks the court to give preclusive effect to these findings, but defendant argues that the magistrate properly declined to adopt them.  The court will address these findings *seriatim*.

Proposed finding 11 states that "Dentsply had in place a policy precluding its dealers from carrying competitive lines of teeth."  The parties agree that proposed finding 11 is inaccurate, insofar as Dentsply's policy merely prevented dealers from *adding* competitive lines of teeth; it did not prevent dealers who already carried competitive lines of teeth from continuing to carry them.  See supra Part I.  Defendant also argues that its enforcement of the policy in 1988 is irrelevant to the pending case, because it occurred outside the limitations period.  However, plaintiffs urge the court to adopt a re-worded version of proposed finding 11, and the court finds it advisable to do so.  The court will therefore adopt the following finding: "No later than December 31, 1988, Dentsply's policy directives precluded dealers from adding competitive lines of teeth to their product lines.  However, dealers who already carried competing products were permitted to continue doing so."

8

Plaintiffs admit that "[p]roposed finding 25 and 27 . . . both tie in to the causation issue[,]" and they simply note that "the language used in these Proposed Findings is almost identical to that used by the Third Circuit."  (Doc. 118 at 18). Although the doctrine of issue preclusion permits the court to make *some* findings from the Third Circuit's holdings in prior litigation, it does not apply to *all* of the Third Circuit's language.  Based on the court's conclusion that the issue of causation was "not fully litigated in the prior action" and was not "essential to the prior judgment[,]" see supra Part III.A, the court agrees with the magistrate judge's recommendation that the language at issue should not be adopted as a finding in the instant case.

Proposed finding 29 states that "Dentsply's alleged justification was pretextual and did not excuse its exclusionary practices."  It further provides that Dentsply's purported justification was inconsistent with evidence on various other points.  The magistrate judge recommended that, instead of adopting proposed finding 29, the court should adopt a finding that "Dentsply's alleged business justification did not excuse its exclusionary practices."  (Doc. 106 at 50-51).  The magistrate judge stated that proposed finding 29 would be redundant in light of the other recommended findings and that "its use of the term pretextual could cause confusion and prejudice."  (Doc. 106 at 51 n.6).  The court agrees with the magistrate judge's rationale for declining to adopt proposed finding 29.  Plaintiffs' objections on this issue are therefore rejected.

9

### C. Does the Statute of Limitations Bar Plaintiffs' Claims?

Defendant asserts that plaintiffs have failed to come forward with sufficient evidence to meet their burden of showing that, *during the limitations period*, defendant took action that was both anticompetitive and injurious to plaintiffs. Plaintiffs have evidence that, during the relevant period, Dentsply engaged in "tooth swaps" with dental product dealers, which means that Dentsply exchanged the dealer's inventory of teeth supplied by Universal for teeth supplied by Dentsply. Plaintiffs' evidence also indicates that Dentsply maintained and enforced Dealer Criterion 6 during the relevant period. Viewing the evidence in the light most favorable to plaintiffs, the court cannot agree with defendant's argument that it is inadequate to meet plaintiffs' burden. Although the evidence does not *conclusively* show that defendant engaged in anticompetitive conduct during the limitations period and thereby harmed plaintiffs, it is sufficient to present the issue to the finder of fact. Therefore, plaintiffs are entitled to proceed to trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).

Defendant also contends that the magistrate judge's statement that "the Court should not only consider evidence regarding Dentsply's actions directed toward Plaintiffs' specifically, but also the actions that infringed competition in the relevant market generally" is erroneous. (Doc. 119 at 8; see also Doc. 106 at 14). The magistrate judge cited LePage's, Inc. v. 3M, 324 F.3d 141 (3d Cir. 2003), for its finding that exclusionary conduct "is not only injurious to the potential competitor [whom it targets] but also to competition in general." Id. at 159; (see Doc. 106 at 14).

10

Defendant observes that injury to "competition in general" is not an issue in the instant case, as it was in LePage's and in the government's prior antitrust litigation against it. According to defendant, neither LePage's nor any other precedent "holds that injury to 'competition in general' is sufficient for a jury to infer injury to *each competitor*." (Doc. 119 at 9 (emphasis in the original)). While this distinction between LePage's and the instant case may be correct, it does not persuade the court that the magistrate judge erred. To the contrary, the court agrees with the magistrate judge's conclusion that evidence of injury to competition in general is worthy of the court's consideration. Such evidence could support a finding that an individual competitor was injured, particularly where, as here, the evidence must be viewed in the light most favorable to the party opposing summary judgment.

In addition, defendant argues that the court should determine that plaintiffs may not recover for acts committed by defendant prior to January 5, 1995, because no reasonable jury could find that defendant engaged in a continuing violation. The court does not agree. Rather, the court is persuaded by the magistrate judge's reasoning and finding that "there exists evidence to support a finding that the continuing violations [doctrine] . . . may have application in this case[.]" (Doc. 106 at 15). Therefore, the court rejects this argument.

**D.  Have Plaintiffs Presented Sufficient Evidence of Damage?**

Defendant argues that plaintiffs' evidence is inadequate to show that defendant's conduct was anticompetitive and caused plaintiffs any injury. For the reasons discussed supra, Part III.C, the court does not agree. However, defendant has raised one additional argument on the issue of whether plaintiffs have failed to

prove injury (not in the context of its statute of limitations argument), and the court will address that argument presently.

Both parties agree that, in order to establish that defendant violated § 2 of the Sherman Act, plaintiffs must show that "the challenged practices bar a substantial number of rivals or severely restrict the market's ambit." (See Doc. 126 at 13-14, Doc. 129 at 11). Defendant argues that plaintiffs cannot show its actions foreclosed a sufficiently significant portion of the market to Universal. Rather, according to defendant, Universal was able to maintain access to a number of dental supply dealers through the grandfather exception to Dealer Criterion 6—the provision which permitted dealers who carried competing products before Dealer Criterion 6 was adopted to continue doing so. Thus, defendant contends that its conduct did not cause antitrust injury to plaintiffs.

Implicit in defendant's argument is a confusion of plaintiffs' burden to demonstrate an antitrust violation with plaintiffs' burden to show that they suffered some "measurable damage" as a result of the antitrust violation. See Deaktor v. Fox Grocery Co., 475 F.2d 1112, 1116 (3d Cir. 1973); see also Pitchford v. PEPI, Inc., 531 F.2d 92, 98 (3d Cir. 1975) ("A plaintiff . . . must demonstrate both that the antitrust laws were violated and that it has suffered 'fact of damage' in consequence of that violation . . . ."). A showing that "the challenged practices bar a substantial number of rivals or severely restrict the market's ambit" is required to demonstrate a § 2 antitrust violation affecting competition generally. However, the court is aware of no legal authority requiring an individual competitor to make the same showing with respect to its own individual access to the market. Of course, a

12

plaintiff must show that the defendant's conduct injured or damaged it, but this burden does not require a plaintiff to show that defendant has foreclosed a significant portion of the market to it. As the court concluded supra, Part III.C, plaintiffs' evidence of injury is sufficient to survive summary judgment.

### E. Could a Factfinder Conclude that Defendant's Tooth Swaps or Rebate Offer Violated Antitrust Law?

According to defendant, there is no basis from which a jury could find that either its tooth swaps or its offer of a rebate for exclusive Dentsply dealers violated § 2 of the Sherman Act. The court disagrees. The Third Circuit has held that "a monopolist is not free to take certain actions that a company in a competitive (or even oligopolistic) market may take," LePage's, 324 F.3d at 151-52, and the government's prior antitrust litigation against defendant has already established that its policies—specifically, Dealer Criterion 6—violated § 2 of the Sherman Act, see Dentsply, 399 F.3d at 196. Viewing the evidence in the light most favorable to the parties opposing summary judgment, the court finds that a reasonable jury could indeed conclude that a monopolist such as the defendant violated § 2 by participating in tooth swaps, or by offering a loyalty discount for exclusive Dentsply dealers, or both.

### F. Should the Court Reject Recommended Findings?

Defendant objects to recommended findings 6, 15, 19, 21, and 22, on the basis that they are inapplicable or misleading. The court will examine defendant's objections to these findings in turn.

Defendant objects to the statement in finding 6 that it "block[ed] access to the key dealers[,]" and defendant asserts that Universal continued to have access to

13

most dealers, thanks to the grandfather provision in Dealer Criterion 6. The court is not persuaded that finding 6 is inaccurate on this basis, because finding 6 is articulated with reference to "most manufacturers" and "competitors," not with specific reference to Universal. Furthermore, any potential for finding 6 to mislead a jury can be alleviated by the defendant's evidence and argument concerning the extent to which Universal benefitted from the grandfather provision.

Defendant argues that finding 15's statement that "Dentsply enforced Dealer Criterion 6 against a dealer who attempted to switch to a competitor's teeth" would mislead the jury. Defendant avers that the competitor referenced was not Universal, and therefore, this finding is immaterial to the pending action and would mislead the jury. The court concludes, to the contrary, that finding 15 is material, insofar as it demonstrates defendant's anticompetitive conduct; obviously, a key part of plaintiffs' case is demonstrating an antitrust violation. The fact that finding 15 refers to a competitor other than Universal does not render it misleading.

Defendant also contends that finding 19 is inaccurate with respect to Universal, because the grandfather provision of Dealer Criterion 6 gave Universal far more than a "small sliver" of the market. Like finding 6, however, finding 19 refers to "competitors," not specifically to Universal, and therefore it is not inaccurate. Defendant is free to show that Universal had access to a significant portion of the market, unlike the "competitors" referenced in finding 19, but defendant has failed to persuade the court that finding 19 is inaccurate.

With respect to finding 21, which states that "[o]n several occasions, Denstply has required dealers to drop some, or all, competing tooth brands in order to obtain

14

[its] tooth line[,]" defendant argues that the finding is immaterial to the instant action and would mislead the jury. Defendant asserts that it did not require a dealer to drop Universal teeth on any of these occasions. Furthermore, defendant insists that most of the events to which this finding refers occurred outside the applicable limitations period. As noted, plaintiffs' evidence may be sufficient to establish that the continuing violations doctrine applies to the instant case. Accordingly, the court will not reject finding 21 on the basis of its reference to events occurring outside the limitations period. Nor will the court reject this finding on the basis of its reference to tooth brands other than Universal. Finally, the court notes that its rationale for adopting finding 15 applies with equal force to finding 21.

Defendant raises a similar argument regarding finding 22, which refers to ten incidents "in which Dentsply required agreement by new as well as long-standing dealers not to handle competitors' teeth[.]" Defendant states that nine of these ten incidents did not involve an agreement to forego an inventory of Universal teeth, and the tenth incident occurred outside the limitations period which applies to the instant case. For the reasons stated above, the court rejects these arguments.

### G.     Do the Remaining Portions of the R&R Contain Clear Error?

The court has reviewed the magistrate judge's entire R&R, including those portions to which the parties have filed no objections. In accordance with the Third Circuit's directive, the court has examined those portions of the R&R for clear error, and it has found none.

**IV. <u>Conclusion</u>**

The court agrees with the magistrate judge's conclusion that plaintiffs' motion (Doc. 63) for partial summary judgment should be granted to the extent that it precludes defendant from re-litigating issues concerning the anti-competitive nature of its business practices but denied to the extent that plaintiffs seek to avoid litigating the questions of damages and causation. The magistrate judge also properly concluded that defendant's motion (Doc. 64) for summary judgment should be granted with respect to plaintiff's state law claims and denied with respect to plaintiffs' federal antitrust claims. The court will also adopt the findings recommended by the magistrate judge, and it will adopt one additional finding.

An appropriate order will issue.


       S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge


Dated:      March 31, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNIVAC DENTAL COMPANY, and LACTONA CORPORATION,** | : | CIVIL ACTION NO. 1:07-CV-0493 |
| | : | |
| **Plaintiffs** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **DENTSPLY INTERNATIONAL, INC.,** | : | |
| | : | |
| **Defendant** | : | |

# **ORDER**

AND NOW, this 31st day of March, 2010, upon consideration of the report of the magistrate judge (Doc. 106), recommending that the motions (Docs. 63, 64) for summary judgment be granted in part and denied in part, and upon further consideration of the parties' objections (Docs. 118, 119) to the magistrate judge's report and recommendation, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The report of the magistrate judge (Doc. 106) is ADOPTED.

2. Defendant's motion (Doc. 64) for summary judgment is GRANTED in part and DENIED in part as follows:

    a. Summary judgment is GRANTED with respect to plaintiffs' state law claims.

    b. Summary judgment is DENIED with respect to plaintiffs' federal antitrust claims.

3. Plaintiffs' motion (Doc. 63) for summary judgment is GRANTED in part and DENIED in part as follows:

    a. Defendant shall not re-litigate issues concerning the general anticompetitive nature of its practices.

  b. Plaintiffs shall be required to prove causation—specifically, a causal relationship between defendant's anticompetitive practices and plaintiffs' injury—and damages—including the fact of injury and the amount of damages.

4. In addition to adopting the findings recommended by the magistrate judge, the court will adopt the following finding: "No later than December 31, 1988, Dentsply's policy directives precluded dealers from adding competitive lines of teeth to their product lines. However, dealers who already carried competing products were permitted to continue doing so."

5. The Clerk of Court is directed to defer the entry of judgment on the claims described in Paragraph 2(a) until the resolution of all claims.


          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge